Joseph H. Malley (TX State Bar No. 12865900)
Law Offices of Joseph H. Malley P.C.
1045 North Zang Blvd
Dallas, Tx 75208
Telephone: (214) 943-6100
Facsmile:   (214) 943-6170
malleylaw@gmail.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| MARK LANING, ARTHUR LOPEZ, individually, and on behalf of themselves, and all others similarly situated individuals, | **CLASS ACTION COMPLAINT** |
| Plaintiffs, | JURY DEMAND |
| V. | COMPLAINT FOR: |
| NATIONAL RECALL & DATA SERVICES, INC., a Nevada Corporation, CHARLES HOLLEY, an individual, NAVISS, L.L.C., a Missouri Corporation, CLAYTON LOGOMASINI, an Individual; JASON CHRISCO, an Individual; and Doe Individuals and Corporations 1-100 inclusive, | Violations of the Driver's Privacy Protection Act, 18 U.S.C. §2721 et seq. |
| Defendants. | |

**COMPLAINT—CLASS ACTION**

**COMES NOW,** Plaintiffs, Mark Laning  and Arthur Lopez; individually, and on behalf of themselves and all others similarly situated individuals, by and through their Attorney, Joseph H. Malley, with the Law Offices of Joseph H. Malley, P.C., move for as and for their complaint, and demanding trial by jury, allege as follows upon information and belief, based upon, *inter alia*, investigation conducted by and through their attorney, which are alleged upon knowledge, bring their legal action against National Recall & Data Services, Inc., Charles Holley, Naviss, L.L.C., Clayton Logomasini, Jason Chrisco, and Doe Individuals and Corporations 1-100 inclusive., (hereinafter referred collectively to as "Defendants"). Plaintiff's allegations as to themselves and their own actions, as set forth herein, are based upon their personal knowledge, and all other allegations are based upon information and belief pursuant to the investigations of counsel. Based upon such investigations, Plaintiffs believe that substantial evidentiary support exists for the allegations herein, or that such allegations are likely to have evidentiary support after a reasonable opportunity for further investigation and discovery.

The true names and capacities, whether individual, corporate, associate, director, officer, agent, its employees, officers, directors, legal representatives, heirs, assigns, successors, individual or corporate entities acting within a partnership, joint venture, trust, association, union, subsidiaries, whether wholly or partially owned, divisions, whether incorporated or not, affiliates, branches, joint ventures, franchises, operations under assumed names, websites, and entities over which it exercises supervision or control, or group of individuals associated in fact, although not a legal entity, or other legal entity, of each of the Defendant Doe Individuals and Corporations 1-100 inclusive, (hereinafter

referred collectively to as "Doe"), are unknown to Plaintiffs at their time and therefore

Plaintiffs sues Doe by such fictitious names. Plaintiffs will ask leave of the Court to amend

their complaint to show the true names and capacities of Doe when that information is

ascertained. Plaintiffs is informed and believes, and thereon alleges, that each of the

Defendants designated herein as Doe are legally responsible in some manner for the

performance of the acts and omissions described below, and are liable for the events and

happenings alleged, and in such manner, proximately caused harm to Plaintiffs as further

alleged.

Defendants National Recall & Data Services, Inc., Charles Holley, Naviss, L.L.C.,

Clayton Logomasini, Jason Chrisco, and Doe Individuals and Corporations 1-100 and each of

them, are individually sued as participants, co-conspirators, and aiders and abettors in the

improper acts, plans, schemes, and transactions, including but not limited to acts, whether

individual, corporate, associate, director, officer, agent, its employees, officers, directors,

legal representatives, heirs, assigns, successors, individual or corporate entities acting

within a partnership, joint venture, trust, association, union, subsidiaries, whether wholly

or partially owned, divisions, whether incorporated or not, affiliates, branches, joint

ventures, franchises, operations under assumed names, websites, and entities over which

it exercises supervision or control, or group of individuals associated in fact, although not a

legal entity, or other legal entity, of each of the Defendants, that are the subject of their

complaint.

## I.
## NATURE OF ACTION

1. Plaintiffs bring their consumer Class Action lawsuit pursuant to Federal Rules of Civil Procedure 23(a), (b)(1), (b)(2), and (b)(3), on behalf of themselves and a proposed class of similarly situated Individuals, (hereinafter referred to as "Class Members"), who were victims of unfair, deceptive, and unlawful business practices; wherein their privacy and security rights, were violated by Defendant National Recall & Data Services Inc. , (hereinafter referred individually to as "National"), and Defendant Charles Holley, and knowingly authorized, directed, ratified, approved, acquiesced, or participated, in conduct made the basis of their class action, acting in a capacity best described colloquially to as a "Supplier," acting independently, and in concert, with Naviss, L.L.C., Clayton Logomasini, Jason Chrisco, and Doe Individuals and Corporations 1-100 inclusive, (hereinafter referred individually to as "Doe" and collectively referred to as "National Affiliates"), and each knowingly authorized, directed, ratified, approved, acquiesced, or participated, in conduct made the basis of their class action, in a capacity best described colloquially to as "Distributors", in acts that include one (1) or more of the following:

    1. Obtain, Plaintiff's and Class Members' Motor Vehicle Records, (hereinafter referred to as MVRs"), from State Motor Vehicle Departments, without their express consent, for purposes that violated the Driver's Privacy Protection Act (hereinafter referred to as "DPPA");

    2. Re-disclose, directly or indirectly, Plaintiff's and Class Members' MVRs, without their express consent, for purposes that violated the DPPA;

    3. Re-sell, directly or indirectly, Plaintiff's and Class Members' MVRs, without their express consent, for purposes that violated the DPPA.

2.   The nature of their action includes a sequence of events, each which violates the DPPA

individually and collectively, wherein:

a. Defendant National Recall & Data Services Inc. and Defendant Charles Holley,

obtained Plaintiff's and Class Members' motor vehicle records from State Motor

Vehicle Departments, for direct marketing, without authorization and express

consent, in order to perpetuate fraudulent activity that violated the Federal Driver

Privacy Protection Act, perpetuating such activity in a heedless, willful, and wanton

manner, knowingly disregarding the safety and privacy of Plaintiffs and Class

Members;

b. Defendant National Recall & Data Services Inc. , and Defendant Charles Holley,

intentionally, or in the alternative, negligently re-disclosed and/or resold Plaintiff's

and Class Members' motor vehicle records from State Motor Vehicle Departments

to National Affiliates, for direct marketing, without their authorization and express

consent, in order to perpetuate fraudulent activity that violated the Federal Driver

Privacy Protection Act perpetuating such activity in a heedless, willful, and wanton

manner, knowingly disregarding the safety and privacy of Plaintiffs and Class

Members, and on occasions, acting, or omitting to act, in a negligent manner,

(*Gordon v. Softech Int'l, Inc.,* U.S., No. 13-533, *cert. den.* 1/13/14; *Arcanum*

*Investigations, Inc. v. Gordon,* U.S., No. 13-539, *cert. den.* 1/13/14);

c. Defendants acted independently, and in concert, and each knowingly authorized,

directed, ratified, approved, acquiesced, or participated, in conduct made the basis

of their class action. Defendants obtained Plaintiffs, and Class Members', MVRs to

use, process, store, re-disclose, resell, and purchase Personal Identifying

Information, derived in whole or part, from Plaintiffs and Class Members' MVRs, maintained by the State Motor Vehicle Department in acts which include, but are not limited to, conducting, aiding and abetting, assisting, facilitating, participating in a pattern of conduct, an enterprise affecting interstate commerce, including as a direct market provider of MVRs, to market and solicit, directly or indirectly, Plaintiffs and Class Members, without their express consent.

d. Plaintiffs suffered an injury in fact, an invasion of a legally protected interest which was concrete and particularized, a harm that was actual or imminent.

3.   On information and belief, each Defendant used additional parties to commit such acts, made the basis of their action, individually and jointly, both intentionally and negligently, in whole or part, acting as a direct, or contributory party, to the action made the basis of their action. Pending discovery of such affiliates' involvement, acts complained of, and made the basis of their complaint, Plaintiffs will amend the complaint to include such parties.

**II.**
**PARTIES**

4.   Plaintiff Mark Laning is an individual residing in Dallas County, Texas, and is a licensed and registered driver in the State of Texas. His motor vehicle records, includes name, address, VIN number, vehicle type, make, model, year, and license plate number. Plaintiff Laning's motor vehicle records were obtained by Defendant National Recall & Data Services, Inc. and Defendant Charles Holley then re-disclosed and/or resold to National Affiliates for purposes that included direct marketing use, which resulted in a direct marketing letter being sent to Plaintiff Laning, without his express consent, by "Vehicle Administration

Center", an affiliation of Naviss, L.L.C., and owned by Clayton Logomasini, and Jason Chrisco.

5. Plaintiff Arthur Lopez is an individual residing in Dallas County, Texas, and is a licensed and registered driver in the State of Texas. His motor vehicle records, includes name, address, VIN number, vehicle type, make, model, year, and license plate number. Plaintiff Lopez's motor vehicle records were obtained by Defendant National Recall & Data Services, Inc. and Defendant Charles Holley then re-disclosed and/or resold to National Affiliates for purposes that included direct marketing use, which resulted in a direct marketing letter being sent to Plaintiff Lopez, without his express consent, by "Vehicle Administration Center", an affiliation of Naviss, L.L.C., and owned by Clayton Logomasini, and Jason Chrisco.

6. Defendant National Recall & Data Services, Inc. a Nevada Corporation, does business within their State, was doing business within their State during the Class Period, and may be served with process by serving its registered agent: Eastbiz.com, Inc. 5348 Vegas Drive, Nevada, 89108.

7. Defendant Charles Holley an individual that does business in Texas, was doing business within their State during the Class Period, and who may be served with process by serving Defendant Charles Holley at 5606 S.P.I.D., Suite D PMB 294, Corpus Christi, TX. 78412.

8. Defendant NAVISS, L.L.C., f/n/a and f/d/b/a North American Vehicle insurance Specialists, LLC, VSC 101, Services, LLC, North American Insurance Specialists, Vehicle Administration Center, VSC Administration, North American Insurance Services, and Warranty Consultants Groups, LLC., each lacking a separate corporate identity,

(hereinafter referred collectively to as "NAVISS"), is a Missouri limited liability company authorized to do business in Texas and who may be served with process by serving the Texas Secretary of State at Citations Unit, P.O. Box 12079, Austin, Texas 78711-2079. Upon information and belief, its principle place of business is 10176 Corporate Square Drive, Suite 240 St. Louis, MO 63132.

9.  Defendant Clayton Logomasini (hereinafter "Logomasini") is a principle of Defendant Naviss, a corporation which is the alter ego or business conduit of a Defendant Logomasini and Chrisco. Upon information and belief, Logomasini is a resident of the State of Missouri. He may be served with process by serving him at 671 Clifton Drive Weldon Spring, MO. 63304.

10. Defendant Jason Chrisco (hereinafter "Chrisco") is a principle of Defendant Naviss, a corporation which is the alter ego or business conduit of a Defendant Logomasini and Chrisco. Upon information and belief, Chrisco is a resident of the State of Missouri. He may be served with process by serving him at 2 Robert Johns Way, St. Charles, MO 63303.

**III.**
**JURISDICTION AND VENUE**

11. This Court has jurisdiction over the subject matter jurisdiction of their action pursuant to 28 U.S.C. § 1331.

12. This Court has jurisdiction over Defendant National Recall & Data Services, Inc., a corporation that operated within the class period in the State of Texas, doing business in Texas, registering as a Foreign For-Profit Corporation. FEIN 46077727, providing the following Texas business address: 5606 S.P.I.D., Suite D PMB 294, Corpus Christi, TX.

78412. The certificate of registration was forfeited on February 20, 2015.

13. This Court has jurisdiction over Defendant Charles Holley an individual operating in the State of Texas, doing business in Texas.

14. Defendant Naviss, LLC, is a Missouri limited liability company authorized to do business in Texas, operating in the State of Texas, doing business in Texas.

15. Defendant Clayton Logomasini and Defendant Jason Chrisco are principles of Defendant Naviss, a Missouri limited liability company authorized to do business in Texas, operating in the State of Texas, doing business in Texas.

16. Plaintiffs are citizens and residents of Dallas County, Texas, and asserts and claims on behalf of a proposed class whose members are domiciled throughout the fifty states and the U.S. territories. There is minimal diversity of citizenship between proposed Class Members and Defendants.

17. This court has Federal question jurisdiction as the complaint alleges violations of the following:

   a) Violations of the Driver's Privacy Protection Act, 18 U.S.C. §2721, et. seq.

18. Subject-matter jurisdiction exists in this Court related to their action pursuant to 28 U.S.C. § 1332.  The aggregate claims of Plaintiffs and the proposed Class Members exceed the sum or value of $5,000,000.00.

19. Venue is proper in their District, and vests jurisdiction in the State of Texas and Federal Courts in their district, under 28 U.S.C. §1391(b) and (c) against Defendants. A substantial portion of the events and conduct giving rise to the violations of law complained of herein occurred within their state, and within their district. Thus, mandatory jurisdiction in their U.S. District Court vests for any Class Member, wherever they reside, which occurred

within the United States. The application of the law should be applied to any Class

Member, made the basis of their action, anywhere within the United States, as if any and

all activity occurred entirely in Texas and to a Texas resident. Thus, citizens and residents

of all states are Class Members, for all purposes related to this instant Complaint, similarly

situated with respect to their rights and claims as Texas residents, and therefore are

appropriately included as Class Members, regardless of their residency, or wherever the

activity occurred made the basis of their action.

20. Minimal diversity of citizenship exists in their action, providing jurisdiction as proper in the

Court, since Defendants conducted activity within their state and in their district during

the class period, and Plaintiffs include citizens and residents of their state and district, and

assert claims on behalf of a proposed class whose members are scattered throughout the

fifty states and the U.S. territories; thus there is minimal diversity of citizenship between

proposed Class Members and the Defendants.

21. This is the judicial district wherein the basis of the conduct complained of herein involving

the Defendants was implemented, in whole or part.  Motor vehicle records were obtained

from their state and used within the state and district; therefore, evidence of conduct as

alleged in their complaint is located in their judicial district.

**IV.**
**DRIVER'S PRIVACY PROTECTION ACT 18 U.S.C. §2721 et seq.**

22. With the advancement of information technology in the 1980's a threat to privacy arose

from the nonconsensual dissemination of personal information, and Congress sought to

regulate particular private sectors. The highly publicized 1989 murder of actress Rebecca

Schaeffer brought to light the potential threat to privacy and safety posed by their

commerce in motor vehicle record information. Schaeffer had taken pains to ensure that her address and phone number were not publicly listed. Despite those precautions, a stalker was able to obtain her home address through her state motor vehicle records. Evidence gathered by Congress revealed that the incident involving Rebecca Schaeffer was similar to many other crimes in which stalkers, robbers, and assailants had used state motor vehicle records to locate, threaten, and harm victims. Based on evidence about threats to individuals' privacy and safety from misuse of personal information in state motor vehicle records, Congress enacted the DPPA to restrict the disclosure of personal information in such records without the consent of the individual to whom the information pertains.

23. To protect the privacy and safety of licensed drivers, and to limit misuse of the information contained in these government record systems, Congress enacted the Driver's Privacy Protection Act of 1994, 18 U.S.C. §§2721-2725. The Act imposed strict rules for collecting the personal information in driver records, and provided for liability in cases where an individual or corporation improperly collects, discloses, uses, or sells such records. Congress paid particular attention to differences between motor vehicle records and other public records containing similar information, which it decided not to regulate. One concern that motivated enactment of the DPPA was that personal information in motor vehicle records, including names and addresses, is associated with license plate numbers, which drivers must display to the general public:

"Unlike with license plate numbers, people concerned about privacy can usually take reasonable steps to withhold their names and address[es] from strangers, and their limit their access to personal identifiable information" in other records".

140 Cong. Rec. H2523 (daily ed. Apr. 20, 1994) (statement of Rep. Edwards); ibid.

(statement of Rep. Moran).

24. Congressional testimony in 1993 highlighted potential threats to privacy and personal

safety from disclosure of personal information held in state DMV records. Representative

Moran noted in part:

> "Balancing the interests of public disclosure with an individual's right to privacy is
> delicate, but essential, task for government. The Driver Privacy Protection Act (H.R.
> 3365), which I introduced last week, safeguards the privacy of drivers and vehicle
> owners by prohibiting the release of personal information—including a person's
> name and address—to anyone without a specific business-related reason for
> obtaining the information. Their bill by itself will not stop stalking. But it will stop
> State government from being an accomplice to the crime".

LEGISLATION TO PROTECT PRIVACY AND SAFETY OF LICENSED DRIVERS—H.R. 3365
(Extension of Remarks- November 03, 1993) [Page: E2747]," HON. JAMES P. MORAN in the
House of Representatives, WEDNESDAY, NOVEMBER 3, 1993, (last accessed September 27,
2013).

25. The testimony before Congress also discussed concerns that the personal information

contained in state DMV records had considerable commercial value. In particular, the

personal information sold by state DMVS were being used extensively at that time to

support the direct-marketing efforts of businesses. See 1994 WL 212836 (Feb. 3, 1994)

(statement of Richard A. Barton, Direct Marketing Association) ("The names and

addresses of vehicle owners, in combination with information about the vehicles they

own, are absolutely essential to the marketing efforts of the nation's automotive

industry."). Personal information in DMV records "is combined with information from

other sources and used to create lists for selective marketing use by businesses, charities,

and political candidates." 140 Cong. Rec. H2522 (daily ed. Apr. 20, 1994) (statement of

Rep. Moran) ("Marketers use DMV lists to do targeted mailings and other types of

marketing.").

26. Professor Mary Culnan testified that privacy concerns about the use of information "are especially likely to arise when the reuse is not compatible with the original purpose for collecting the information," since in such circumstances "the prospect of misinterpretation or crass exploitation usually follows." 1994 WL 212834 (Feb. 3, 1994) (citation omitted). Professor Culnan further explained:

"DMV information is not collected voluntarily. Few people can survive without a driver[']s license or an automobile, and a condition of having either is to register with the state. By providing their information to marketers without providing an opt-out to its citizens, the state is essentially requiring people to participate in direct marketing absent any compelling public safety argument. This is in direct contrast to most of the other mailing lists based on private sector data, such as a list of subscribers to a particular magazine. The people on these lists have indicated an interest in participating in direct marketing because they have "raised their hands" in the marketplace by voluntarily responding to a commercial offer of some type. No such claim may be made for all licensed drivers and registered automobile owner[s]."

27. Due to the concerns regarding the improper uses of motor vehicle records by the marketing industry, the DPPA, initially enacted in 1994, was amended in 1999 to change the law to eliminate the practice of selling personal information. Senator Shelby, the principal sponsor, warned against "unrelated secondary uses" of motor vehicle information without prior approval (i.e., for commercial sale in the open market), when the records have been obtained only for the purpose of vehicle registration. Senator Shelby underlined that the purpose of the DPPA was to ensure that individuals must "grant their consent" before the state or a third party can sell or release highly restricted personal information "when it is to be used for the purpose of direct marketing, solicitations, or *individual look-up*." *4 Hrg. Before the Subcomm. on Transp. of the S. Comm on Appropriations, 106th Cong.* (2000) (statement of Sen. Shelby, Sponsor), available at 2000 WL 374404.

28. The "opt-out" provisions of the original version of the DPPA was changed to "opt-in" provisions in §§2721(b)(11) and (12) by the October 1999 amendments to the DPPA. See Pub. L. No. 106-69, 113 Stat. 986 (Oct. 9, 1999). Personal information in motor vehicle records could now be disclosed in certain circumstances for bulk distribution for surveys, marketing, or solicitation, but only if individuals are provided an opportunity, in a clear and conspicuous manner, to block such use of information pertaining to them. 18 U.S.C. §2721(b)(12).

29. The DPPA defines "personal information" as "information that identifies an individual, including an individual's photograph, social security number, driver identification number, name address (but not the five (5) digit zip code), telephone number, and medical or disability information, but does not include information on vehicular accidents, driving violations, and driver's status." 18 U.S.C. §2725(3). "[M]otor vehicle record" is defined as "any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles." 18 U.S.C. §2725(1). The DPPA's general prohibition on disclosure of personal information is subject to fourteen (14) exceptions—the permissible purposes—which allow for the limited disclosure of personal information.

30. The 14 permitted uses of DMV data are designed to "strik[e] a critical balance between an individual's fundamental right to privacy and safety and the legitimate governmental and business needs for th[e] information." 140 Cong. Rec. 7925 (1994) (remarks of Rep. Moran). The DPPA never explicitly lists any prohibited uses; rather, it generally prohibits all but the fourteen permissible uses enumerated in section 2721(b). The fourteen permissible uses under the DPPA are:

(1) For use by any government agency, including any court or law enforcement agency, in carrying out its functions, or any private person or entity acting on behalf of a Federal, State, or local agency in carrying out its functions.

(2) For use in connection with matters of motor vehicle or driver safety and theft; motor vehicle emissions; motor vehicle product alterations, recalls, or advisories; performance monitoring of motor vehicles, motor vehicle parts and dealers; motor vehicle market research activities, including survey research; and removal of non-owner records from the original Owner records of motor vehicle manufacturers.

(3) For use in the normal course of business by a legitimate business or its agents, employees, or contractors, but only-

　　(A) to verify the accuracy of personal information submitted by the individual to the business or its agents, employees, or contractors; and

　　(B) if such information as so submitted is not correct or is no longer correct, to obtain the correct information, but only for the purposes of preventing fraud by, pursuing legal remedies against, or recovering on a debt or security interest against, the individual

(4) For use in connection with any civil, criminal, administrative, or arbitral proceeding in any Federal, State, or local court or agency or before any self-regulatory body, including the service of process, investigation in anticipation of litigation, and the execution or enforcement of judgments and orders, or pursuant to an order of a Federal, State, or local court.

(5) For use in research activities, and for use in producing statistical reports, so long as the personal information is not published, re-disclosed, or used to contact individuals.

(6) For use by any insurer or insurance support organization, or by a self-insured entity, or its agents, employees, or contractors, in connection with claimed investigation activities, antifraud activities, rating or underwriting.

(7) For use in providing notice to the owners of towed or impounded vehicles.

(8) For use by any licensed private investigative agency or licensed security service for any purpose permitted under their subsection.

(9) For use by an employer or its agent or insurer to obtain or verify information relating to a holder of a commercial driver's license that is required under chapter 313 of title 49.

(10) For use in connection with the operation of private toll transportation facilities.

(11) For any other use in response to requests for individual motor vehicle records if the State has obtained the express consent of the person to whom such personal information pertains.

(12) For bulk distribution for surveys, marketing or solicitations if the State has obtained the express consent of the person to whom such personal information pertains.

(13) For use by any requester, if the requester demonstrates it has obtained the written consent of the individual to whom the information pertains.

(14) For any other use specifically authorized under the law of the State that holds the record, if such use is related to the operation of a motor vehicle or public safety. 18 U.S.C. §2721(b).

31. Sections 2721(a) and 2722(a) make nondisclosure of personal information the default rule. See 18 U.S.C. § 2721(a) ("In general" prohibiting disclosure of personal information "except as provided in subsection (b)"); 18 U.S.C. § 2722(a) ("It shall be unlawful for any person knowingly to obtain or disclose personal information . . . for any use not permitted under section 2721(b) of their title."). Section 2721(b) then lists fourteen discrete exceptions to non-disclosure.

32. According to section 2721(c), "[a]n authorized recipient of personal information (except a recipient under subsection (b)(11) or (12)) may resell or re-disclose the information only for a use permitted under subsection (b) (but not for uses under subsection (b)(11) or (12)). An Authorized Recipient under (b)(11) may resell or re-disclose personal information for any purpose. An Authorized Recipient under section (b)(12) may resell or re-disclose personal information pursuant to subsection (b)(12)." 18 U.S.C. § 2721(c).

33. Any person who receives personal information from a DMV and resells or further discloses that information must, for five (5) years, maintain records identifying each person or entity to whom a further resale or re-disclosure was made, and the permitted purpose for

such resale or re-disclosure. See 18 U.S.C. 2721(c) (fourth sentence) (1994 & Supp. III 1997).

34. The DPPA creates a private right of action for "the individual" whose personal information was knowingly obtained, disclosed, or used "for a purpose not permitted" under section 2721(b). 18 U.S.C. § 2724(a). "It shall be unlawful for any person knowingly to obtain or disclose personal information . . . for *any* use not permitted under section 2721(b) of their title." 18 U.S.C. § 2722(a).

35. The DPPA expressly provides for liquidated damages independent of showing actual damages, where all damages are subject to the Court's discretion. The remedy for a violation of the DPPA is unambiguous under the plain terms of the statute. In *Kehoe v. Federal Bank & Trust*, the Eleventh Circuit held, based on the unambiguous language of the DPPA, which actual damages are not necessary in order to recover under the liquidated damages provision of the DPPA. 421 F.3d 1209, 1212 (11th Cir. 2005) (citing *Doe v. Chao,* 540 U.S. 614 (2004)). The DPPA remedies are as follows:

> (b) Remedies.--The court *may* award--
> (1) Actual damages, but not less than liquidated damages in the amount of $2,500;
> (2) Punitive damages upon proof of willful or reckless disregard of the law;
> (3) Reasonable attorneys' fees and other litigation costs reasonably incurred; and
> (4) Such other preliminary and equitable relief as the court determines to be appropriate.

36. The Congressional record is clear: the core of the DPPA is to prevent the unauthorized obtainment of a citizen's personal information and the statute creates a tangible right to have one's information secure. The violation of that security is a harm that supports standing.

**PLAINTIFF'S OCCURRENCES, HARM, AND STANDING**

## A. PLAINTIFF'S OCCURRENCES

37. Plaintiffs ("Plaintiffs") are United States residents. Class Members are United States residents that experienced the same occurrences as Plaintiffs:

   a. Plaintiffs registered a motor vehicle with the State Motor Vehicle Department within their state during the Class Period. Plaintiffs were legally obligated to provide personal and sensitive identifying information within the motor vehicle information provided to the State Motor Vehicle Department for purposes required by law in order to be legally able to operate their vehicle within their state, an obligation that did not require the release of such to any individual or corporation that did not possess legal rights to access their motor vehicle records;

   b. Plaintiff's motor vehicle records were obtained by Defendant National Recall & Data Services Inc. and Defendant Charles Holley for impermissible DPPA purposes, without notice or express consent of the Plaintiffs;

   c. Plaintiffs was unaware that Defendant National Recall & Data Services Inc. and Defendant Charles Holley would obtain, re-disclose and/or resell their motor vehicle records for impermissible DPPA purposes. Plaintiffs could not have learned about Defendant National Recall & Data Services Inc. and Defendant Charles Holley's access to their motor vehicle records except through unreasonably burdensome efforts, such as those required in the investigation underlying these allegations;

   d. Plaintiffs had Defendant National Recall & Data Services Inc. and Defendant Charles Holley re-disclose and/or re-sell their motor vehicle records,

intentionally, or in the alternative, negligently, to National Affiliates, including but not limited to, Defendant Naviss, for impermissible DPPA purposes;

e.  Plaintiffs had National Affiliates, including but not limited to, Defendant Naviss, obtain their motor vehicle records from Defendant National Recall & Data Services Inc. and Defendant Charles Holley, knowing the source of the Plaintiff's motor vehicle records was the State Motor Vehicle Department, for impermissible DPPA purposes;

f.  Plaintiffs had Defendant National Affiliates, including but not limited to, Defendant Naviss, use their motor vehicle records, in whole or part, for purposes which included direct marketing;

g.  Plaintiffs received a direct marketing letter from "Vehicle Administration Center", an entity owned and operated by Defendant Naviss, using data derived, in whole or part, from Plaintiffs and Class Members' motor vehicle records obtained by Defendant National Recall & Data Services Inc.  and Defendant Charles Holley;

h.  Plaintiffs became the victims of privacy and security violations due to Defendants' unauthorized access to, and use of, their motor vehicle records, suffering harm, and seek monetary and injunctive redress.

i.  Plaintiffs requires permanent injunctive relief because Defendant's violation of the DPPA is ongoing and, without the Court's intervention, will continue even if the Court were to award a money judgment for past instances of DPPA violations to Plaintiffs, but will do nothing to protect Plaintiff's rights going forward.

**B.** **PLAINTIFF'S HARM**

38. Plaintiffs has suffered an Injury In Fact-that was "concrete and particularized", and

"actual or imminent, not conjectural or hypothetical." as a result of the

Defendant's unauthorized obtainment, re-disclosure, and/or resale of Plaintiff's

motor vehicle records, obtained without express consent, from state motor

vehicle departments for uses that included direct marketing, a violation of the

Driver's Privacy Protection Act, 18 U.S.C. §2721 et seq., Defendants, individually

and collectively, caused  Plaintiffs "Tangible" and "Intangible" harms, including but

not limited to, the following:

**1.** **Violation of the Driver's Privacy Protection Act, 18 U.S.C. §2721 et seq.**

39. Plaintiffs suffered an injury in fact because Defendants violated a "legally protected

privacy interest", protected by the Driver's Privacy Protection Act, 18 U.S.C. §2721 et

seq., resulting in an Injury-In-Fact-that was "concrete and particularized", and "actual or

imminent, not conjectural or hypothetical, resulting in tangible and intangible harms

mentioned herein.  Plaintiff's injury in fact was due to the taking, and public disclosure

of Personal Identifying Information contained within Plaintiff's motor vehicle records.

The private affairs of the Plaintiffs include the contents of their motor vehicle records.

Their information is especially private because it reveals an individual's name, address,

and their motor vehicle information, which should not be publicly disclosed such

information that reasonable people ordinarily understand to be private, as well as in

intrusion into their private matters. Plaintiff's motor vehicle records are not a matter of

legitimate public concern. Therefore, Defendants surreptitiously obtaining Plaintiff's

private motor vehicle records held by State Department of Motor Vehicle Departments

for purposes that include direct marketing is, and will continue to be, regarded as highly

offensive and objectionable and a violation of the Driver's Privacy Protection Act, 18

U.S.C. §2721 et seq., due to one (1) or more of the following acts:

    a.  Obtainment of Plaintiff's and Class Members' Motor Vehicle Records from State Motor Vehicle Departments, without their express consent, for purposes that violated the Driver's Privacy Protection Act (hereinafter referred to as "DPPA");

    b.  Re-disclosure, directly or indirectly, Plaintiff's and Class Members' MVRs, without their express consent, for purposes that violated the DPPA; and

    c.  Re-sale, directly or indirectly, Plaintiff's and Class Members' MVRs, without their express consent, for purposes that violated the DPPA.

**2. Informational Injury**

40. Plaintiffs suffered an injury in fact because Defendants failed to provide information

as required including, but not limited to, the following:

  a. Defendant National Recall & Data Services Inc. and Defendant Charles Holley had

    a legal obligation to inform the State Department of Motor Vehicles and Plaintiffs

    that the motor vehicle records it was obtaining would be used, directly or

    indirectly, for direct marketing. The failure to provide their information injured

    Plaintiffs;

  b. Defendant National Recall & Data Services Inc. and Defendant Charles Holley had

    a legal obligation to inform the State Department of Motor Vehicles and

    Plaintiffs that the motor vehicle records it was obtaining would be re-disclosed

    and/or re-sold, directly or indirectly, to Defendant National Affiliates, entities

    known to be in the direct marketing business. The failure to provide their

1   information injured Plaintiffs;

2   c. Defendant National Recall & Data Services Inc. and Defendant Charles Holley had

3   a legal obligation to inform the State Department of Motor Vehicles and

4
5   Plaintiffs that the motor vehicle records it had obtained and re-disclosed and/or

6   resold was being used for acts which violated the DPPA:

7    "The Purchaser shall immediately inform the State if privacy protected
    personal information provided to the purchaser is disclosed in violation of
8   the   DPPAs. Their obligation applies whether the disclosure was by the
    Purchaser or a person or entity that acquired privacy protected
9   information from the Purchaser, directly or indirectly".
10
11  The failure to provide their information injured Plaintiffs;

12  d.   Defendant National Recall & Data Services Inc. and Defendant Charles

13      Holley had a legal obligation requiring notice to the Plaintiffs, and all

14
15      affected individuals, pertaining to the unauthorized use of the motor

16      vehicle records it provided to Defendant National Affiliates which were

17      used for direct marketing, without the Plaintiffs express consent. Such

18
19      notice should have been done in the most expedient time possible and

20      without unreasonable delay. Defendant National Recall & Data Services

21      Inc.  and Defendant Charles Holley compounded their information injury,

22
23      an injury that continues to date, failing to notify Defendant National

24      Affiliates to cease use of the motor vehicle records; moreover, failing to

25      notify Plaintiffs that [their] motor vehicle records were being used

26      improperly, the failure of such notice resulted in harm. The failure to

27      provide their information injured Plaintiffs.
28

**3. Lost Time, Money, and Resources**

41. Plaintiffs suffered an injury in fact because Defendants made the Plaintiffs lose time, money, and resources including, but not limited to, the following:

a. Plaintiffs expended [their] time, money, and resources to provide the motor vehicle record information to State Motor Vehicle Departments, an obligation required by law. Plaintiffs expended [their] time, money, and resources with the understanding that such information would only be used for permissible purposes. Defendants obtained [their] motor vehicle record information [he] provide[d] to the State Motor Vehicle Departments for impermissible uses, negating Plaintiff's expenditure of [their] time, money, and resources;

b. Plaintiffs lost [their] time, money, and resources involving the receipt of the unauthorized and unwarranted offers, Defendant National Affiliates' Direct Marketing letters, an intrusion upon and occupation of the Plaintiff's property. These unwarranted offers wasted [their] time, money, and resources, IE, by depleting limited time for Plaintiffs to obtain, open, read, comprehend the letters, and handling such accordingly, an interruption and distraction.

**4.  Identity Theft, and Risk of Future Identity Theft, Fraud, and Swindles**

42. Plaintiffs suffered an injury in fact because Defendants unauthorized obtainment, re-disclosure, and re-sale of [their] motor vehicle record resulted in Identity Theft; moreover, such also created a risk of future identity theft, fraud, and swindles which amounts to a material risk of harm, concrete and particularized, imminent, and certainly impending.  Courts have held that "the risk that Plaintiff's personal data will be misused by … hackers … is immediate and very real."  *In re Adobe Sys., Inc. Privacy Litig.*, 66 F. Supp. 3d 1197, 1214 (N.D. Cal. 2014).  In *Remijas v. Neiman Marcus Group,*

*LLC*, 794 F.3d 688 (7th Cir. 2015), the risk of identity theft was sufficient to confer Article III standing because Plaintiffs alleged that data servers had already been breached. Id. at 694. That "threatened harm" therefore "is sufficiently concrete and imminent" to satisfy Article III standing.

**5. Security Risk**

43. Plaintiffs suffered an injury in fact because Defendants' unlawful disclosures created a material risk, a security risk of bodily injury and harm, if the personal information inherent within the motor vehicle records, including but not limited to, the Plaintiff's name and address was re-disclosed, intentionally or negligently, to persons that would do harm to the Plaintiffs and their family. The *Spokeo* Court specifically stated that "the risk of real harm" can "satisfy the requirement of concreteness." *Spokeo*, 136 S. Ct. at 1549. Their security risk, an attributing factor for enactment of the DPPA in 1994, and amendment in 2000, poses a material risk of harm, actual, imminent, and certainly impending for Plaintiffs and their family.

**C. PLAINTIFF'S STANDING**

44. To establish Article III, § 2. Standing, a doctrine rooted in the U.S. Constitution's "case or controversy" requirement, Plaintiffs must demonstrate (1) an injury-in-fact that was "concrete and particularized", and "actual or imminent, not conjectural or hypothetical.", (2) fairly traceable to the defendants' actions, (3) that is likely to be redressed by a favorable decision. Plaintiffs have satisfied all three (3) requirements, resulting in the aforementioned tangible and intangible harms.

45. The U.S. Supreme Court's recent opinion reaffirmed in Spokeo that 'Intangible'

Injuries are "Concrete" for Purposes of Article III 2. Standing where Congress Codified Established Common Law Rights, as Here, Codifying the Driver's Privacy Protection Act, 18 U.S.C. §2721, et. seq. *Spokeo,* reaffirmed the fundamental—and uncontroversial—principle that to establish injury-in-fact under Article III a Plaintiffs must allege "an injury that is both 'concrete *and* particularized.'" *Spokeo,* 136 S. Ct. at 1545 (quoting *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc*., 528 U.S. 167, 180-181 (2000)) (emphasis in original). After clarifying that the "concrete" and "particularized" inquiries must be conducted separately, the Court affirmed the long-standing principle that a concrete injury can be either tangible, such as monetary loss, or *intangible*, such as a violation of one's free speech or free exercise rights. *Id*. at 1549 (citing *Pleasant Grove City v. Summum*, 555 U.S. 460 (2009) (free speech); *Church of  Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520 (1993) (free exercise)).

**I. Injury In Fact-that was "concrete and particularized", and "actual or imminent, not conjectural or hypothetical."**

**a.  Plaintiff's Injuries are "Concrete", not merely a "Bare Procedural Violation"**

46. To establish the initial standard of the first element –injury in fact- Plaintiffs has satisfied the "Concreteness" requirement because The Supreme Court's reaffirmed in *Spokeo* that violations of a statute protecting against "intangible" harm *can* constitute "concrete" injuries sufficient to confer Article III standing, without the need to show any further harm. 136 S. Ct. 1540, 1549 (2016). Where, as here, the interests protected by a statute have a "close relationship" to rights rooted in the common law, or where Congress has "elevate[d]" certain rights "to

the status of legally cognizable injuries," violations of those interests amount to injury-in-fact. *Id*. In other words, a Plaintiffs in such a case **need not** allege any *additional* harm beyond the one Congress has identified." *Id.* (emphasis added).

47. The Supreme Court, in evaluating whether an intangible injury is sufficiently "concrete" to satisfy the injury-in-fact requirement, identified two important factors: the history and the judgment of Congress, providing the following instructions to Courts: "it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo*, 136 S. Ct. at 1549. 'Private rights' have traditionally included rights of *personal security*, property rights, and contract rights." *Id.* (emphasis added) (citing 1 W. Blackstone, Commentaries at *130-139). Injury to personal privacy has long provided a basis for suit in American courts. See Restatement (Second) of Torts §652A cmt. a (1977) (noting that "the existence of a right of privacy is now recognized in the great majority of American jurisdictions"); *Pavesich v. New England Life Ins. Co.*, 50 S.E. 68, 70 (Ga. 1905) ("A right of privacy . . . is therefore derived from natural law. Their idea is embraced in the Roman's conception of justice . . . .); Samuel D. Warren & Louis D. Brandeis, The Right to Privacy, 4 Harv. L. Rev. 193, 198 (1890) (noting that "the common-law right to intellectual and artistic property are . . . but instances and applications of a general right to privacy.")

**1. Driver's Privacy Protection Act, 18 U.S.C. §2721 et seq. Codifies "Concrete" Privacy Injuries that are Historically Recognized in Common Law**

48. The history of common law rights to privacy and the judgment of Congress, explicitly

contemplated in the legislative histories of the respective statutes, resulted in the enactment of the Driver's Privacy Protection Act, 18 U.S.C. §2721 et seq. to protect an individual's right to personal privacy and security, which traditionally provided a basis for a lawsuit at common law. Far from being a "Bare Procedural Violation", Defendant's conduct is the core harm contemplated that the DPPA guards against.

49.  The DPPA expressly protects and codifies fundamental privacy rights that are rooted in history and the common law. Sections 2721(a) and 2722(a) make nondisclosure of personal information the default rule. See 18 U.S.C. § 2721(a) ("In general" prohibiting disclosure of personal information "except as provided in subsection (b)"); 18 U.S.C. § 2722(a) ("It shall be unlawful for any person knowingly to obtain or disclose personal information . . . for any use not permitted under section 2721(b) of their title."). Section 2721(b) then lists fourteen discrete exceptions to non-disclosure; furthermore, according to section 2721(c), [a]n "authorized" recipient of personal information (except a recipient under subsection (b)(11) or (12)) may resell or re-disclose the information only for a use permitted under subsection (b) (but not for uses under subsection (b)(11) or (12)). An Authorized Recipient under (b)(11) may resell or re-disclose personal information for any purpose. An Authorized Recipient under section (b)(12) may resell or re-disclose personal information pursuant to subsection (b)(12)." 18 U.S.C. § 2721(c). As such, the DPPA is a codification of well-established common law rights of privacy.

50. In enacting the DPPA, Congress recognized that it was codifying claims rooted in the common law: "[T]he right of privacy, the right to be left alone, and the right against unreasonable searches and seizures—the right, that is, to be personally secure—are among the most highly valued rights of an American citizen. These guarantees have

been a part of Anglo-Saxon law ever since the 15th century." 114 Cong. Rec. S6194 (daily ed. May 23, 1968) (statement of Sen. Fong). Thus, there can be no doubt that the unauthorized access to Plaintiff's motor vehicle records for purposes that included direct marketing without prior consent— codified as unlawful by DPPA—amounts to a "concrete" injury that bears, at a minimum, a "close relationship" to the common law's steadfast protection of one's fundamental right of privacy.

51.  The DPPA creates for Plaintiff[s] a specific, enforceable legal right, derived from common law, to expect Defendants to not gain access to [their] identifying information …contained within motor vehicle records held by State Department of Motor Vehicles [and] its violation constitutes a concrete, particularized deprivation. Defendants violated the statute by obtaining, re-disclosing and/or re-selling Plaintiffs[s'] personal information, and it deprived Plaintiffs[s] of a right to which [they] [were] particularly entitled by law, constituting an injury-in-fact, acts sufficient to confer Article III, § 2. Standing.

**2. The U.S. Congress Recognized a "Concrete" Harm Related to the Unauthorized Obtainment, Re-disclosure, and Re-sale of Motor Vehicle Records Obtained from State Motor Vehicle Departments By Enacting The Driver's Privacy Protection Act, 18 U.S.C. §2721 et seq.**

52. The "judgment of Congress"—which is both "instructive and important"—also confirms that the claims here satisfy Article III. *Spokeo*, 136 S. Ct. at 1549. The legislative history of DPPA makes clear it was intended to recognize and codify the concrete harm that results from having a third party obtain, re-disclose, and/or re-sell their motor vehicle records, without express consent, for purposes that included direct marketing. The DPPA was initially passed in 1994 as part of Title XXX of the Violent Crime Control and

Law Enforcement Act to govern the privacy and disclosure of personal information

gathered by State Departments of Motor Vehicles.  In recommending DPPA's passage,

Representative Edwards remarked:

"Unlike with license plate numbers, people concerned about privacy can usually take reasonable steps to withhold their names and address[es] from strangers, and their limit their access to personal identifiable information" in other records".

140 Cong. Rec. H2523 (daily ed. Apr. 20, 1994) (statement of Rep. Edwards); ibid. (statement of Rep. Moran),  (emphasis added).

b)   The Fifth Circuit has also uniformly recognized the Congressional intent of the DPPA:

"Congress originally passed it (as an amendment to the Crime Control and Law Enforcement Act of 1994) in response to the murder of actress Rebecca Schaeffer at the hands of a stalker. 140 CONG. REC. H2518-01, H2526 (1994) (Statement of Rep. Goss). Their stalker used DMV records to find Schaeffer's unlisted home address. Id. The legislative history reflects the concern for victims of crimes committed using DMV records.", *Taylor v. Acxiom Corp.,* No. 2:07cv0001, 2008 U.S. Dist. LEXIS 115940 (E.D. Tex. Sept. 9, 2008), aff'd, 612 F.3d 325 (5th Cir. 2010).

c)   In enacting the DPPA Congress's unmistakable intent was to create an express legal

right prohibiting the "unauthorized access" to personal information contained within

motor vehicle records held by the State Motor Vehicle Departments.  That privacy

invasion is the precise concrete injury Plaintiffs alleges here, acts sufficient to confer

Article III Standing.

**b. Injury-In-Fact- "Particularized" Requirement**

53. To establish the secondary standard of the first element –injury in fact- Plaintiffs have

satisfied the "Particularized" requirement because it affected the Plaintiffs in a

personal and *individual* manner, an injury suffered in particular, and not one suffered

by a third party or a "generalized grievance shared in substantially equal measure by

all or a large class of citizens," *Warth v. Seldin*, 422 U.S. 490, 499 (1975). The

1  Defendants violated *their* statutory rights, not just the statutory rights of other people,

2  and *their* personal interests in the privacy of *their* motor vehicle records are

3  individualized rather than collective. The Plaintiffs did not provide *their* express

4  consent to permit Defendants access to *their* motor vehicle records; furthermore,

5

6  Defendants obtained, re-disclosed, and/or resold *their individual* motor vehicle

7  records, while the direct marketing letters were sent to *their individual* residences.

8  **c.  Injury-In-Fact- "actual or imminent, not conjectural or hypothetical."**
   **Requirement**

9

10  54. To establish the secondary standard of the first element –injury in fact- Plaintiffs have

11  satisfied the injury was actual or imminent, not conjectural or hypothetical because

12

13  Defendant's actions had already occurred, IE, Defendant National Recall & Data

14  Services Inc. and Defendant Charles Holley had already obtained Plaintiff's motor

15  vehicle records from State Motor Vehicle Departments without a DPPA permissible

16

17  use, had re-disclosed and/or re-sold Plaintiff's motor vehicle records to Defendant

18  National Affiliates had actually sent direct marketing letters to Plaintiffs, and it had

19  affected the Plaintiffs. Such acts were actual, while other acts noted below were

20  imminent, and both were not "conjectural or hypothetical."

21

22  **II. Injury-In-Fact- fairly traceable to the defendants' actions**

23  55. To establish the standard of the second element –injury in fact-fairly traceable to the

24  defendants' actions, - Plaintiffs have satisfied their requirement because the

25  Defendant's actions made the basis of their action, revealed by a "covert"

26

27  investigation conducted by the Texas Department of Motor Vehicles, showed

28  unequivocally that Defendant National Recall & Data Services Inc., and Defendant

Charles Holley, in concert with Defendant National Affiliates had violated the DPPA.

Defendant National Recall & Data Services Inc., and Defendant Charles Holley,

entered into a purchase agreement with the Texas Department of Motor Vehicles to

obtain the Texas Motor Vehicle Registration database on a continuous and repeated

basis. The Texas Department of Motor Vehicles "seeded" the motor vehicle records

sold to Defendant National Recall & Data Services Inc. and Defendant Charles Holley.

The identical "seeded" data was incorporated into direct marketing letters sent by

Defendant National Affiliates to State Officials; furthermore, Defendant National

Recall & Data Services Inc.  and Defendant Charles Holley, failed in their duty as a re-

seller of the motor vehicle records obtained from State Motor Vehicle Departments

to confirm the DPPA permissible uses of Defendant National Affiliates.


**III. Injury In Fact-that is likely to be redressed by a favorable decision**

56. To establish the standard of the third element –injury in fact- that is likely to be

redressed by a favorable decision, Plaintiffs have satisfied their requirement because a

favorable decision by their Court shall provide relief permitted by the DPPA, including

an order to cease Defendant's unauthorized obtainment, re-disclosure and/or re-sale

of Plaintiffs and Class Members' motor vehicle records, a legal right provided to

injured parties within the DPPA which authorizes such redress. Plaintiffs will further be

redressed when their Court orders permanent injunctive relief because Defendant's

violation of the DPPA is ongoing and, without the Court's intervention, will continue

even if the Court were to award only a money judgment for past instances of DPPA

violations to Plaintiffs, but would do nothing to protect Plaintiff's rights going forward.

1

2

3

**VI.**

**STATEMENT OF FACTS**

4

**A.**     <u>**Introduction**</u>

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



CHEVROLET SILVERADO C1500

**REQUEST FOR IMMEDIATE ACTION - TIME SENSITIVE MATERIAL ENCLOSED**

WARNING: $2,000 FINE, 5 YEARS IMPRISONMENT, OR BOTH FOR ANY PERSON INTERFERING OR OBSTRUCTING
WITH DELIVERY OF THIS LETTER. U.S. MAIL TTT.18 U.S. CODE

TO BE OPENED BY ADDRESSEE ONLY
PLEASE RESPOND WITHIN FIVE DAYS

T265  P1 93513
EMMA LUSK
2213 BUFFALO GAP
LEANDER TX 78641-8888

57. For all consumers that have ever been harassed by direct marketing letters selling

"extended vehicle warranties" falsely advertising that your vehicle warranty had

expired, wondered how these companies knew your personal information, IE., your

name and address associated with the make, model, and year of your vehicle, and had

concerns that your home address was publicly being sold and feared that your family's

security was at risk and privacy violated, their class action will identify sources used to

obtain their personal information and implement such unauthorized activities, and the

elements of a business enterprise implemented by the obtainment of state motor

vehicle records, directly or indirectly, then re-disclosed and/or re-sold, in order to aid

and abet the direct marketing industry, acts done without the individuals' express

consent, a violation of the Driver's Privacy Protection Act ("DPPA").

58. Proof of such DPPA violations by the Defendants, the basis of their class action,

evidencing a pattern across the United States, was the result of a covert investigation

conducted by the State of Texas Department of Motor Vehicle Department which

"seeded" motor vehicle records sold to "Bulk Requestors", referencing persons and/or

entities that obtain the entire database of state motor vehicle records and/or obtain

all periodic updates. "Emma Lusk, 2213 Buffalo Gap, Leander Tx. 78641-888" was

seeded data provided by the State of Texas Department of Motor Vehicle Department

to Defendant National Recall & Data Services Inc. and Defendant Charles Holley, which

was then re-disclosed and/or re-sold to Defendant Naviss and National Affiliates, and

used for direct marketing, a violation of the DPPA.

59. The protections afforded consumers by the Driver's Privacy Protection Act is premised

on a screening process qualifying access to their state motor vehicle records. Their

obligation is imposed on any and all individuals and entities that obtain, re-disclose,

and resell such data, imposing a duty on "Authorized Recipients", acting as re-sellers to exercise reasonable care in responding to requests to purchase the motor vehicle records. Individuals and entities that obtain, re-disclose, and/or re-sell the motor vehicle records obtained from state motor vehicle departments, must follow screening policies and reasonable verification measures. Defendant National Recall & Data Services Inc.  and Defendant Charles Holley intentionally, or in the alternative, negligently re-disclosed and/or re-sold motor vehicle records obtained from the State Department of Motor Vehicles to Defendant National Affiliates, without adequate screening precautions.

60. The unauthorized access to State Motor Vehicle Records exists at the "cost" of the Plaintiffs and Class Member's privacy and security, creating a reasonable fear of present and future injury, compelling individuals to take costly and burdensome measures to protect their privileged information from risk of access and probable harm. Kristi Dyroff, an advocate with the National Organization for Victim Assistance, discussed the consequences from the improper access to motor vehicle records:

Kristy Dyroff, National Organization for Victim Assistance, "DPPA fails to provide protection for crime victims", October 30, 2013, (last accessed June 3, 2016), online: http://www.trynova.org/category/nove-blog.

**B.  Defendants' Business Practices and Associations**

61. On information and belief, the most prevalent unauthorized use of Motor Vehicles Records obtained from State Department of Motor Vehicles is by those persons

and/or entities involved in the Vehicle Service Contract Industry, a billion-dollar enterprise. In order to outline the Defendant's business practices, and the incentive for Defendants to act as a "supplier" or "Distributor", an understanding of the "VSC Industry" is necessary, including knowing the participants, and the participants' functions.

62. There are at least six (6) principal participants in a VSC Industry: (1) the consumer who purchases the VSC (the "Consumer"), (2) the dealer that markets the VSC to the consumer (the "Dealer"), (3) the administrator that develops and administers the VSC itself and is the party obligated to reimburse the cost of covered repairs (the "Administrator"), (4) the risk retention group that guarantees to pay covered claims if the Administrator does not satisfy its obligation to the Consumer (the "Insurer"), (5) the financing organization that enables the Consumer to pay for the VSC (the "Financing Organization"), and (6) "the supplier," referencing individuals and entities that supply the leads originating from sources that include obtaining state motor vehicle records.

63. The VSC Industry employs financial instruments to vertically integrate an association of entities requiring a "lead supply chain". A state's MVR database provides the most accurate and updated database of all licensed drivers and vehicles, providing a marketing database surpassing all other sources. As such, the VSC industry is involved with any and all means possible, at any costs, ignoring legal constraints, to procure their database. Once the database is obtained then the marketing and solicitation scheme can be implemented.

64.  Defendant National Recall & Data Services Inc.  is a corporation involved in the Direct Marketing Industry, acting as a Direct Market Provider assisting Direct Marketing persons and entities. Defendant Charles Holley is an individual involved in the Direct Marketing Industry, acting as a Direct Market Provider assisting Direct Marketing entities. Defendant National Recall & Data Services Inc. obtains state motor vehicle records from many state DMVs.

65. Defendant Naviss is a corporation involved in the Direct Marketing Industry, acting as a Direct Market Provider assisting Direct Marketing persons and entities. Defendants Logomasini and Chrisco are individuals involved in the Direct Marketing Industry.

66. The VSC Industry is the poster child for marketing abuses, illegal telemarketing, and deceptive mailers. It is a complex financial infrastructure, funded by a multitude of financial institutions. The core of their industry is "fueled" by illegally obtaining millions of motor vehicle records from State Motor Vehicle Departments, the "grease" to create and send the VSC marketing letters.

C.  **The Texas Department of Motor Vehicles conducted a covert investigation which found undeniable proof that Defendants National Recall LLC. and NAVISS violated DPPA**

67. In an effort to investigate the unauthorized access to Texas MVRs by KMB Statistics L.L.C., presently a pending Federal Class Action, initially styled: Doe et. al. v. Compact Information Systems Inc. et al., 3:13-cv-05013-M-BH, filed in the United States District Court, Northern District of Texas, an action which had included Compact Information Systems Inc., Accudata Integrated Marketing Inc., Elizabeth M. Blank, Data Solutions of America Inc., KMB Statistics L.L.C., and Doe

Defendants, and presently styled: Cross v. Blank, Adv. No.: 9:15-ap00926-FMD,

pending in the United States Bankruptcy Court for the Middle District of Florida, a

Freedom Of Information Act ("FOIA") request was sent to the Texas Department

of Motor Vehicles which responded with a most incriminating series of

documents that revealed undeniable proof of DPPA violations by Defendants

National Recall & Data Services Inc., and Defendant Charles Holley evidencing

violations of the DPPA. Such proof of DPPA violations was obtained by State

Representatives of the Texas Department of Motor Vehicles.

68. Generally, State Department of Motor Vehicles' investigation to determine

liability for any and all individuals and entities involved in the unauthorized

obtainment, re-disclosure, and/or re-sale of motor vehicle records is a difficult

process. Driver's Privacy Protection Act, 18 U.S.C. §2724(a) "sets forth the three

elements giving rise to liability, i.e., that a defendant (1) knowingly obtained,

disclosed or used personal information, (2) from a motor vehicle record, (3) for a

purpose not permitted." Thomas v. George, Hartz, Lundeen, Fulmer, Johnstone,

King and Stevens, P.A., 525 F.3d 1107, 1111 (11th Cir. 2008), Taylor v. Acxiom.

Corp. 612 F.3d. 325. 5th Cir. 7/14/10. 5th Cir.  Defendant's activity satisfied all

three elements giving rise to DPPA liability, (emphasis added).

69.  One (1) of the reasons that State Department of Motor Vehicles have difficulty

proving liability for DPPA violations is because the data is aggregated with other

data then redistributed to a multitude of third parties, thus any attempt to

identify the initial source of the data is near impossible. State Motor Vehicle

Departments' attempting to monitor DPPA compliance would need to dissect the

hypothetical "State Motor Vehicle Record -Direct Marketing-Distribution

Network", but such attempts are curtailed because the State DMV officials have

limited choice but to accept verbatim, the Bulk Requestor's claimed permissible

DPPA uses. Another common ploy used by most Bulk Requestors attempting to

avoid detection is to claim one (1) legitimate DPPA use in order to bypass the

State Motor Vehicle Departments' screening process, then, directly or indirectly,

re-disclose and/or re-sell the data to entities without DPPA permissible purposes.

An additional factor is that the risk assumed for detection of persons and/or

companies violating DPPA is minimal, while the "rewards" for acting as a

"supplier" are substantial since State Motor Vehicle Record databases "feed" the

billion dollar Vehicle Service Contract Industry. As such, few methods exist to

disprove DPPA compliance, that is, unless the State Motor Vehicle Departments

"Seed" the motor vehicle records provide to Bulk Requestors, a method used by

the Texas Department of Motor Vehicles.

70. Within the response to the Freedom of Information Act ("FOIA") received from

the Texas Department of Motor Vehicles it revealed the propensity of Defendant

National Recall & Data Services Inc. and Defendant Charles Holley to violate the

DPPA.  Defendant Charles Holley had entered into a contract with the Texas

Department of Motor Vehicles, on behalf of Defendant National Recall & Data

Services Inc., to obtain its database of motor vehicle records; (**See Exhibit 1**).

71. The DPPA permits states to be more restrictive in its implementation, but not

more lenient, thus the "Certification of Use" within the Defendant National Recall

& Data Services Inc. contract provided more stringent controls,  obligating

Defendant National Recall & Data Services Inc., as the purchaser to have the permissible use "itself", thus not qualifying as a reseller if persons acquiring the motor vehicle records from Defendant Charles Holley had a permissible use while Defendant Charles Holley didn't possess the permissible use, noted within the contract as follows:

1. Certified intended uses include only those uses for which the Purchaser itself will actually employ the information;

2. Certified intended uses do not include uses that are speculative or that will be engaged in by persons acquiring the information from the Purchaser.

72. Defendant Charles Holley and Defendant National Recall & Data Services Inc. did not possess a DPPA permissible use, nor had any intention to use the motor vehicle records for permitted uses within the DPPA. The DPPA exceptions include two (2) limiting factors: (1) The entities that may claim the exception, and (2) the purpose for which information may be requested. Defendant Charles Holley had certified four (4) permissible uses, of the fourteen possible "permissible" purposes, when Defendant Charles Holley entered into a service contract with the Texas Department of Transportation on behalf of Defendant National Recall & Data Services Inc.; wherein the selections meant the authorization to obtain, re-disclose, and/or re-sell motor vehicle information for the following purposes:

1. "A" which corresponds to the "**Recall Exception**", referencing, "for use in connection with matters of motor vehicle or driver safety and theft, including but not limited to, providing notice of recalls, by motor vehicle manufacturers";

2. "B" which corresponds to the "**Normal Course of Business Exception"**,

referencing, "to verify the accuracy of personal information submitted by the

individual to the business or agent, employee, or contractor of the business";

3. "D" which corresponds to the "**Research Exception,**" referencing, "research or

in producing statistical reports but only if the personal information is not

published, re-disclosed, or used to contact any individual", and

4. "E" which corresponds to the "**Insurance Exception,**" referencing, "an insurer

or insurance support organization, or by a self-insured entity, or an agent,

employee, or contractor of the entity, in connection with claims investigation

activities, antifraud activities, rating, or underwriting."

73. In order to qualify under the "**Recall Exception,**" the request must be from a

business involved in motor vehicle safety and recalls, preferably Auto

Manufacturers. Defendant National Recall & Data Services Inc., and Defendant

Charles Holley's disclosure and subsequent resale would have been for a use not

permitted. As such, neither Defendant National Recall & Data Services Inc.,

Defendant Charles Holley, nor any other Direct Marketing entities, were eligible

to obtain information pursuant to the Motor Vehicle Safety and Recall Exceptions,

pursuant to the DPPA permissible uses:

> "**(b)Permissible Uses.—**Personal information referred to in subsection (a) shall be disclosed for use in connection with matters of motor vehicle or driver safety and theft, motor vehicle emissions, motor vehicle product alterations, recalls, or advisories, performance monitoring of motor vehicles and dealers by motor vehicle manufacturers, and removal of non-owner records from the original owner records of motor vehicle manufacturers to carry out the purposes of titles I and IV of the Anti Car Theft Act of 1992, the Automobile Information Disclosure Act (15 U.S.C. 1231 et seq.), the Clean Air Act (42 U.S.C. 7401 et seq.), and chapters 301, 305, and 321–331 of title 49, and, subject to subsection (a)(2), may be disclosed as follows:…

> **(2)**For use in connection with matters of motor vehicle or driver safety and theft; motor vehicle emissions; motor vehicle product alterations, recalls, or advisories;

performance monitoring of motor vehicles, motor vehicle parts and dealers; motor vehicle market research activities, including survey research; and removal of non-owner records from the original owner records of motor vehicle manufacturers."

On information and belief, neither Defendant National Recall & Data Services Inc., Defendant Charles Holley, nor did any other Defendants, satisfy such DPPA requirements. The Defendant National Affiliates obtained the Plaintiffs' and Class Members' motor vehicle records, directly or indirectly from Defendant National Recall & Data Services Inc. and Defendant Charles Holley. If none of the affiliates were eligible to claim the "Recall Exception," Defendant National Recall & Data Services Inc. and Defendant Charles Holley's disclosure and subsequent resale would have been for a use not permitted. As such discovery is required to consider (1) whether Defendant National Affiliates were eligible to request information pursuant to the Normal Business Exceptions noted by Defendant National Recall & Data Services Inc.  and Defendant Charles Holley, (2) if so, whether the activities derived from the exceptions had occurred, (3) if so, whether the activity had occurred. On information and belief, such exceptions did not exist.

74. In order to qualify under the "**Normal Course of Business Exception**," the request must be from a business that requires verification of personal information submitted by an individual to the business and for the purposes of preventing fraud and pursuing legal remedies or recovering on a debt. On information and belief, neither Defendant National Recall & Data Services Inc. or Defendant Charles Holley, nor did any other Defendants, satisfy such DPPA requirements. The Defendant National Affiliates obtained the Plaintiffs' and Class Members' motor vehicle records, directly or indirectly from Defendant National

Recall & Data Services Inc.  and Defendant Charles Holley. If none of the affiliates were eligible to claim the "Normal Business Exception," Defendant National Recall & Data Services Inc. and Defendant Charles Holley's disclosure and subsequent resale would have been for a use not permitted. As such discovery is required to consider (1) whether Defendant National Affiliates were eligible to request information pursuant to the Normal Business Exceptions noted by Defendant National Recall & Data Services Inc.  and Defendant Charles Holley, (2) if so, whether the activities derived from the exceptions had occurred, (3) if so, whether the activity had occurred. On information and belief, such exceptions did not exist.

75. In order to qualify under the "**Research Exception**," the request must be from a business involved in research and statistical reports, "so long as the personal information is not published, re-disclosed, or used to contact individuals". Defendant National Recall & Data Services Inc.  use of "Recall" or "Data Services" within the title of its company may claim it operates within their industry, using such identification as a "decoy" to avoid detection by State MVR Departments in order to obtain motor vehicle records, but on information and belief, Defendant National Recall & Data Services Inc.  was involved in the direct marketing industry with the intention to use the motor vehicle records itself, or resell the data to parties involved in the direct marketing industry, and direct marketing companies. On information and belief, neither Defendant National Recall & Data Services Inc. or Defendant Charles Holley, nor did any other Defendants, satisfy such DPPA requirements. Defendant National Affiliates obtained the Plaintiffs

and Class Members' motor vehicle records, directly or indirectly from Defendant National Recall & Data Services Inc. and Defendant Charles Holley. If Defendant National Affiliates were not eligible to claim the "Research Exception," Defendant National Recall & Data Services Inc. and Defendant Charles Holley's disclosure and subsequent resale would have been for a use not permitted. As such discovery is required to consider (1) whether Defendant National Affiliates were eligible to request information pursuant to the Research Exceptions noted by Defendant National Recall & Data Services Inc. and Defendant Charles Holley, (2) if so, whether the activities derived from the exceptions had occurred, (3) if so, whether the activity had occurred. On information and belief, such exceptions did not exist.

76. In order to qualify under the "**Insurance Exception**", the request must be made from either an Insurance Company, self-insured entity, or companies involved in assisting entities in the Insurance Industry. On information and belief, neither Defendant National Recall & Data Services Inc., Defendant Charles Holley, nor did any other Defendants, satisfy such DPPA requirements. If the Defendant National Affiliates were not eligible to claim the "Insurance Exception" then Defendant National Recall & Data Services Inc., and Defendant Charles Holley's claimed DPPA permissible uses within the contract would have been for a use not permitted. As such discovery is required to consider (1) whether Defendant National Affiliates were eligible to request information pursuant to the Research Exceptions noted by Defendant National Recall & Data Services Inc. and Defendant Charles Holley, (2) if so, whether the activities

derived from the exceptions had occurred, (3) if so, whether the activity had

occurred. On information and belief, such exceptions did not exist.

77. The Texas Department of Motor Vehicles' response to the Open Records Request

revealed that  the state had implemented a compliance procedure to determine

if any person or company obtaining motor vehicle records were using such for

impermissible purposes, a procedure which involved inserting test records with

"seeded" data; hereinafter referred colloquially to as "fake MVRs", a procedure

to insert the test records into the files that were provided to any and all Bulk

Requestors of motor vehicle records, essentially to "track" motor vehicle records

obtained by Bulk Requestors, without their notice. Each Bulk Requestor was

individually assigned "fake MVRs", which included "fake" names, vehicle info,

VIN numbers, and bank lien information. Their assignment of specific fake MVR

data would allow a mechanism to confirm improper uses. A valid address was

used in order for State Officials to receive any direct marketing. Upon receipt by

a State Official, such letters would be correlated to its original source, thus

identifying individuals and entities involved in associated phases of the motor

vehicle records distribution. Dataspan, the data processing entity associated with

the Texas Department of Motor Vehicles to assist in motor vehicle record release

recorded the "seeded" data associated with each person and/or entity obtaining

the Texas Motor Vehicle records in bulk; (**See Exhibit 2**).

78. Unbeknownst to Defendant National Recall & Data Services Inc., Defendant

Charles Holley, and Defendant National Affiliates, representatives from the Texas

Department of Motor Vehicles were monitoring any unauthorized use of the

motor vehicle records provided to all Bulk Requestors that had obtained Texas motor vehicle records, including Defendant National Recall & Data Services Inc. and Defendant Charles Holley. Their investigation resulted in representatives of the Texas Department of Motor Vehicles involved in the investigation being sent direct marketing letters from persons and/or entities associated with motor vehicle records provided to Defendant National Recall & Data Services Inc. and Defendant Charles Holley. The "seeded" data provided to Defendant National Recall & Data Services Inc. and Defendant Charles Holley, included, but was not limited to, the following: Emma Lusk, 2213 Buffalo Gap, Leander Tx. 78641-8888. This "fake" name, associated with an accurate address, was included in a direct marketing solicitation letter sent by a Defendant National Affiliate identified as "Motor Vehicle Services" using phone number:  1-866-938-4449; **(See Exhibit 3),** Frances Lusk; **(See Exhibit 4),** and Helen Lusk; **(See Exhibit 5).**

79. This "seeded" data provided to Defendant National Recall & Data Services Inc. and Defendant Charles Holley, also included, but was not limited to, the following: Gina Lusk, 2213 Buffalo Gap, Leander Tx. 78641-8888. This "seeded data" was included in a direct marketing solicitation letter sent by a company identified as "VSC Administration" using phone number:  1-800-335-1522; **(See Exhibit 6).**

80. Plaintiff Laning received a direct marketing solicitation letter from a company identified as "Vehicle Administration Center" a direct marketer also using phone number: 1-800-335-1522, the identical phone number noted in the Gina Lusk letter**; (See Exhibit 7)**. VSC Administration and Vehicle Administration Center are

named in a lawsuit, noted below, sued by a company in privity with both entities and noting they are associated corporate entities. Plaintiff Laning did not have a prior commercial relationship with "VSC Administration" ,or "Vehicle Administration Center", nor permitted them express consent to access his motor vehicle records, (**See Exhibit 8**).

81. Plaintiff Lopez received a direct marketing solicitation letter from a company identified as "Vehicle Administration Center" a direct marketer also using the phone number: 1-800-335-1522, the identical phone number noted in the Gina Lusk letter**; (See Exhibit 9**). VSC Administration and Vehicle Administration Center are named in a lawsuit, noted below, sued by a company in privity with both entities and noting they are associated corporate entities. Plaintiff Lopez did not have a prior commercial relationship with "VSC Administration" ,or "Vehicle Administration Center", nor permitted them express consent to access his motor vehicle records, (**See Exhibit 10**).

82. Vehicle Administration Center, VSC Administration, North American Vehicle Insurance Specialists, LLC d/b/a NAVISS, VSC Services 101, LLC, VSC Administration Services Center, Warranty Consultants Group, LLC, are companies owned and operated by Clayton Logomasini, and Jason Chrisco. Reportedly, North American Vehicle Insurance Specialists, LL.C d/b/a NAVISS' association with Enterprise Financial Group, Inc. began on January 25, 2010 and ended in 2014. North American Vehicle Insurance Specialists, LL.C d/b/a NAVISS entered into a contract with EFG agreeing to sell vehicle service contracts to customers under a service contract program, designed and administered by EFG. The

association though turned litigious resulting in a pending lawsuit in a Dallas Texas Court. *Enterprise Financial Group, Inc. v North American Vehicle Insurance Specialists, LL.C d/b/a NAVISS*, et. al. Case 3:15-cv-02036-B, US District Court, Northern District of Texas, Dallas Division, case removed to Dallas District Court, 44th District Court, styled, *Enterprise Financial Group, Inc. v North American Vehicle Insurance Specialists, LL.C d/b/a NAVISS*, et.al, DC-15-00923. Discovery documents filed within the case claim this association involved all of NAVISS' business, IE, "NAVISS took all of its business to EFG and was completely dependent on EFG for funding to survive". Documents filed within the above referenced legal action showed that EFG had agreed to finance the marketing and advertising expenses for North American Vehicle Insurance Specialists, L.L.C. d/b/a NAVISS, administration of the vehicle service contracts, including access to Enterprise Financial Group, Inc.'s proprietary database which contains consumer data, reportedly including "prospective customers", (emphasis added) :

"As part of EFG's regular course of business, EFG aggregates certain consumer data into a proprietary, confidential, and secure database of electronically stored information containing information which includes, but is not limited to, the consumer's name, contact information, address,…" (**See Exhibit 11**).

83. Randy Elhston, Director of Vehicles Titles and Registration Division at the Texas Department of Motor Vehicles sent Defendant Charles Holley a notice letter, dated April 22, 2013, terminating Defendant National Recall & Data Services Inc. and Defendant Charles Holley's access to Texas motor vehicle records, stating in part, "Research indicates that the data you received was provided to an entity that used the information for purposes other than those certified and in direct

violation of statute"; (**See Exhibit 12**).

84. Immediately following the termination of Defendant National Recall & Data Services Inc. and Defendant Charles Holley's contract, Buck Emerson, on behalf of the Loach, Inc. signed a contract to obtain the Texas motor vehicle records. On June, 19, 2013, Buck Emerson and Loach, Inc. were denied access to Texas motor vehicle records due to its association with Defendant National Recall & Data Services Inc. and Defendant Charles Holley; (**See Exhibit 13**).

85. On information and belief, the following persons and entities are associated with Defendant National Recall & Data Services Inc. and Defendant Charles Holley, in addition to Buck Emerson and Loach, Inc.:

   a. National Statistical Services Corporation, with its principle place of business located at 711 South Carson Street, Suite 4, Carson City, NV 89701, both businesses are owned and operated by Defendant Charles Holley. National Statistical Services Corporation had its access to State MVRs terminated in Washington State on July 1, 2011 and North Dakota on November 1, 2012; (**See Exhibits 14**, **15,** and **16**);

   b. Loh, Inc., operating under the fictitious name Loach Inc., using the same address as Defendant National Recall & Data Services, Inc. and National Statistical Services Corporation.

c. Mr. Tomas Milar was the Director with Defendant Recall & Data Services, Inc., moreover Mr. Milar reportedly associated with **two-hundred and nineteen** (**219**) companies operating from the same address as Defendant National Recall & Data Services, Inc. and National Statistical Services Corporation including acting as director

of Surelock Leads Inc..

86. The Florida Department of Highway Safety and Motor Vehicles response to an Open Records Request revealed that Defendant National Recall & Data Services, Inc. and Defendant Charles Holley had entered into a contract to obtain Florida motor vehicle records, an obtainment that continues to date and reportedly involves seventeen million individuals. The contract, DHSMV Contract No: HSMV-0320-13, is a September 2012 contract that replaced Contract No. HSMV 335-10. Defendant Charles Holley signed the Florida contract on behalf of National Recall & Data Services, Inc. claiming not four (4) DPPA permissible uses as in Texas, but three (3) DPPA permissible uses IE, "Normal Course of Business" (4), "Research" (6), and "Insurance" (7), Exceptions, noting such in a document referenced as "Attachment 1". Defendant Charles Holley sent correspondence to Mr. Warren Whitaker, Senior Highway Safety Specialist with the Florida Department of Highway Safety and Motor Vehicles providing details concerning Defendant National Recall & Data Services, Inc.'s claimed DPPA permissible uses, conflating two (2) of the DPPA permissible uses, and interestingly enough, omitting a permissible use related to the "**Recall**" exception even though Defendant National **Recall** & Data Services, Inc. is allegedly in the "**Recall**" business. The letter, dated September 15, 2012, was sent during a period when Defendant Charles Holley began  entering into contracts with State Motor Vehicle Departments using Defendant National Recall & Data Services, Inc. as the named company, an entity incorporated four (4) weeks earlier in Nevada on August 13, 2012, and not using National Statistical Services Corporation, an entity under investigation by a many State Motor Vehicle Departments for DPPA violations at such time; (**See Exhibit 17**).

87. Tina Jensen, a Tampa Fox 13 Special Investigator specializing in Consumer Protection Investigations, recently sought information from the Florida Department of Highway Safety and Motor Vehicles as to the unauthorized access to Florida motor vehicle records. Jensen's investigation resulted in the following reports:

http://www.fox13news.com/news/fox-13-investigates/173793341-story

http://www.fox13news.com/news/local-news/183225466-story .

The reports included testimony from a Florida Department of Highway Safety and Motor Vehicles representative which repeatedly denies that the Florida Department of Highway Safety and Motor Vehicles' sale of the motor vehicle records, reportedly a seventy-three-million-dollar "enterprise", could possibly be associated with direct marketing solicitation letters, even though overwhelming evidence exists of such misuse, evidence obtained by other State Motor Vehicle Departments involving the same companies accessing the Florida motor vehicle records and notice of such investigations had been provided to the Florida Department of Highway Safety and Motor Vehicles. The State Representative's steadfast position apparently is premised upon a reliance of the state's "screening process" of prospective Bulk Requestors of motor vehicle records, referencing persons and/or entities that obtain all Florida motor vehicle records and updates periodically. Reportedly, the extent of the screening process is limited to the following: 1) determine if the Bulk Requestor's website correlates to the claimed business, and 2) confirm that the company is incorporated. Defendant National Recall & Data Services, Inc.'s website provided limited information as to its business practices: http://www.nssc-usa.com/.

Interestingly enough, the business address noted within the incorporation documents

and provided by Defendant Charles Holley on behalf of Defendant National Recall &

Data Services to the Florida Department of Highway Safety and Motor Vehicles is 5348

Vegas Drive, Suite 1236, Las Vegas, NV. 89108, a mail forwarding business that also

acts as the agent for service:  https://www.incparadise.net/nevada/vegas-mail-

forwarding/. Defendant Charles Holley has also used many business addresses: 2710

Thomas Ave. Ste 465, Cheyenne, WY. 82001, a location associated with more than

**2000** companies: http://www.npr.org/2011/07/02/137573513/shell-game-2-000-firms-

based-in-one-simple-house. The Florida Department of Highway Safety and Motor

Vehicles unwillingness to accept even the possibility that some persons and

companies obtaining Florida motor vehicle records may be violating the Driver Privacy

Protection Act ("DPPA), ignoring the findings of other state motor vehicle

departments, including but not limited to, Texas, North Dakota, and Washington,

means Florida residents and their families are without notice of these matters;

moreover, at risk of Safety, Privacy, and Identity Theft violations, (reportedly Florida

ranks number one (1) in Identity Theft nationally and use of motor vehicle records is a

prime component necessary for Identity Theft). Jensen's relentless pursuit of the

truth, in hope to make a difference has prevailed though. Jensen has exposed that the

Florida Department of Highway Safety and Motor Vehicles is "**TURNING A BLIND EYE**".

**D.   Defendants National Recall L.L.C. had a duty to exercise reasonable care as**
   **"Resellers", prior to release of Motor Vehicles Records obtained from State DMVs.**

88. The legislative history of the DPPA makes it clear that it incorporated "the intentions

   of the 1972 Privacy Act…[And also] include[d] the recommendations of the 1977

   Privacy Protection Study Commission [(PPSC")] report." The goal was to prohibit

disclosure of "records" collected and maintained by a Government agency, expect under permissible circumstances. See 5 U.S.C. § 552a (b). The PPSC report recommended that third party record holders be held to the "same standard" as the Government in order to ensure compliance with the important statutory protections. Personal Privacy is an Information Society: The Report of the Privacy Protection Study Commission Ch. 13 (July 1977).

89. Their literal reading of the DPPA was designed to promote public safety and to protect individual privacy, construed so as to maximize their deterrent effect – in particular, by shifting burdens to institutional actors who regularly engage in the targeted conduct or are otherwise in a position to minimize future violations.

90. Congress intended the states to be the "gatekeepers" of the motor vehicle records, limiting the number of people with access to the personal information because the greater the number of people with access, the greater the risk that personal information will be disseminated to those who do not have valid uses for the personal information.

91. Recognizing the threat caused by unfettered access to individuals' Personal Identifiable Information ("PII") obtained from motor vehicle records, and seeking to balance that concern against the legitimate need of certain parties to have access to DMV records, Congress determined that those records should not be disclosed except to those with a legitimate need for them. It embodied that intent in a statutory scheme designed to carefully limit the uses for which such information may be disclosed. 18 U.S.C. § 2721(b). Congress made clear its intent that the burden of ensuring the permissibility of disclosures be borne by "Authorized Recipients" by

imposing a record keeping obligation on them to maintain a list of not only the people

to whom they disclosed the data, but also for what purpose the disclosure was made.

18 U.S.C. § 2721(c). The liability provisions of the DPPA are to be interpreted as

imposing an affirmative obligation on resellers to determine the true purpose of the

"Authorized Recipients."

92. In each sentence of section 2721(c) Congress linked the term "Authorized Recipient"

to the specific section of 2721(b) that had authorized the release of the information to

the recipient. Congress intended that the "Authorized Recipients" to be individuals,

entities, or their agents, qualified to receive the information by the terms of section

2721(b). Resellers cannot obtain all of the personal information in the database simply

by calling themselves resellers. Entities requesting motor vehicle records have to

justify their receipt of personal information under the 2721(b) exception is applicable.

Defendants were not "Authorized Recipients."

93. The United States Supreme Court analyzed the DPPA's use of "Authorized Recipient"

(albeit in dicta) in *Reno v. Condon*, noting a person must have initially obtained the

data for a permissible purpose before resale or dissemination of the data:

> After listing section 2721(b)'s fourteen permissible purposes, Chief Justice
> Rehnquist equated authorized recipients under section 2721(c) with "private
> persons who have obtained drivers' personal information for one of the
> aforementioned permissible purposes to further disclose that information for any
> one of those purposes." This is also the most logical conclusion based on the
> language of the DPPA, the purpose of the statute, the legislative history and
> common sense.(quoting *Reno v. Condon*, 528 U.S. at 146 (citing 18 U.S.C.
> §2721(c)).

94. To ensure that the privacy of driver records is adequately protected under the

DPPA, it was necessary to impose a high standard of duty for resellers when the

records they sell are subsequently used for impermissible purposes, due in part because an industry of "resellers" had arisen to facilitate acquisition by end-users of information collected by State Motor Vehicle Bureaus. As the reseller is in the best position to determine whether the subsequent use of the data would be permissible under the Act, it is the reseller that must bear the burden of ensuring that an impermissible use does not occur and must investigate to determine if entities requesting the motor vehicle records have a DPPA permissible purpose. The state agency ceases to be the custodian of the data once it is obtained by the reseller; the reseller must therefore assume the responsibility and the liability for the subsequent use of the data resulting from its intentional resale, especially as it relates to direct marketing. The civil remedies provision would be rendered "toothless" if resellers could insulate themselves from liability based solely on conclusory representations of end users, without being required to exercise due care themselves.

95. The DPPA regulates the activity of resellers when acting as a "middleman", and places civil damage liability on the person and/or company that knowingly obtains, re-discloses, resells, and purchases the motor vehicle records for improper purposes.

96. In light of the text, structure, and legislative history of the DPPA, resellers are subject to a duty of reasonable care before disclosing DPPA-protected personal information, 18 U.S.C. §2721(b)-(c). Resellers must exercise reasonable care in responding to requests for personal information drawn from motor vehicle records. Resellers are liable if they do not secure proof that representations made by the recipient of personal information was valid. Defendants failed to exercise such reasonable care when reselling the motor vehicle records.

97. The structure of the DPPA supports the conclusion that resellers owe a duty of reasonable care when reselling motor vehicle records to third parties. The DPPA statute uses the word "knowingly," revealing that a level of duty of care exists. The DPPA provides an award of "punitive damages upon proof of willful or reckless disregard of the law." 18 U.S.C. § 2724(b)(2); In contrast, the court may award "actual damages, but not less than liquidated damages in the amount of $2,500." 18 U.S.C. § 2724(b)(1). The actual damages provision is silent as to the degree of fault necessary to trigger liability for actual damages. If, however, as the statute suggests, punitive damages are available only for willful and reckless violations of the DPPA, then actual damages must require something less—that is, conduct that is neither willful nor reckless.

98. The structure of the DPPA, clearly indicates that the liability of a reseller of motor vehicle records is not predicated on their knowledge of the end user's actual purpose. Rather, it is the same as the end user's. That is because section 2722(a) makes no distinction between the mental state required by the person who obtains motor vehicle records and one who discloses it. Indeed, the statue on its face applies equally to those who "obtain" and those who "disclose" Personal Identifiable Information, 18 U.S.C. § 2722(a).

99. Section 2721(c) does not suggests that a reseller may re-disclose protected information so long as its customer claims to have a permissible use. Rather, the DPPA authorizes the resale of information only if there is an actual, not just a stated, permitted use. 18 U.S.C. § 2721(c); Thus, as a purely textual matter, the DPPA indicates that a reseller who sells protected information to a client without an actual

permissible purpose is liable regardless what "certifications" that client has made.

100. Resellers owe the same or similar legal duty that obligates the State Motor Vehicle Department's when releasing motor vehicle records, that is to investigate fully whether individuals or companies obtaining the motor vehicle records have a DPPA permissible purpose. As the motor vehicle records are resold, in whole or part, the likelihood of misuse grows exponentially. The DPPA provides no distinction as to obligations of the end-user, resellers, nor the State Motor Vehicle Departments, as Custodian of the motor vehicle records, *Gordon v. Softech Int'l, Inc.,* U.S., No. 13-533, *cert. den.* 1/13/14; *Arcanum Investigations, Inc. v. Gordon,* U.S., No. 13-539, *cert. den.* 1/13/14).

101. All Defendants are involved, directly or indirectly, in the Direct Marketing industry. The DPPA restricts access to motor vehicle records for Direct Marketing unless express consent is obtained. Defendants failed to obtain express consent. Subsection (b) (12) implements an important objective of the DPPA—to restrict disclosure of personal information contained in motor vehicle records to businesses for the purpose of direct marketing and solicitation. Direct marketing and solicitation presented a particular concern not only because these activities are of the ordinary commercial sort but also because contacting an individual is an affront to privacy even beyond the fact that a large number of persons have access to the personal information. The DPPA was enacted in part to respond to the States' common practice of selling personal information to businesses that used it for marketing and solicitations. Congress chose to protect individual privacy by requiring a state DMV to obtain the license holder's express consent before permitting the disclosure, acquisition, and use of personal

information for bulk solicitation.

102. To verify the eligibility to invoke the claimed DPPA permissible purpose, an entity must provide information, including but not limited to, proof relating to its business which must correspond to its claimed DPPA uses, current status, activity of the employing entity, and purported business affiliation. It is negligent if the reseller fails to make proper inquiries of the end-user, especially if "red flags" exist, and provide "red flags" requiring additional review prior to the purchase of the Plaintiff's and Class Members' MVRs.

103. Defendant National Recall & Data Services Inc., and Defendant Charles Holley, obtained the MVRs for a reason and with a purpose in mind when it entered into a contract with State Motor Vehicle Departments to obtain motor vehicle records. Federal Law, and State contractual duties existed, that obligated Defendant National Recall & Data Services Inc., and Defendant Charles Holley, to obligate Defendant Naviss and National Affiliates to use the requested MVR information for purposes permitted by the DPPA. Hence, at a minimum, Defendant Naviss and National Affiliates' disclosures to Defendant National Recall & Data Services Inc., and Defendant Charles Holley, were not permitted by the DPPA permitted uses, and totally incompatible with the purpose for which the information was collected.

104. Defendant National Recall & Data Services Inc., and Defendant Charles Holley, acting as a reseller, had an actual legal duty to perform, other than the ministerial task of soliciting rote representations from prospective requestors. Resellers must adhere to the same legal requirements as a State Department of Motor Vehicles representatives when re-releasing motor vehicle records, including but not limited to, confirming

those obtaining motor vehicle records have a DPPA permissible use to obtain the motor vehicle records. Their obligation is not met by a merely accepting verbatim the end user's "say-so" in the presence of "red flags" suggesting the requested information was being sought for an improper DPPA purpose. Defendant National Recall & Data Services Inc., and Defendant Charles Holley, was well aware of Defendant Naviss and National Affiliates' business and objectives prior to the release to them of the Plaintiff's and Class Members' MVRs.

105. Defendant Naviss and National Affiliates acting individually and in concert with, acting as a prospective requestor of data which includes Personal Identifiable Information from Defendant National Recall & Data Services Inc., and Defendant Charles Holley, also has a duty, other than the ministerial task of soliciting rote representations from prospective resellers that the data was not derived, in whole or part, from motor vehicle records obtained from State Motor Vehicle Departments. The prospective requesters must confirm that the resellers had a DPPA permissible use to obtain the data and to re-disclose and the resell motor vehicle records. Their obligation is not met merely by accepting the reseller's "say-so" in the presence of "red flags" suggesting the requested information was obtained for a proper purpose. Research would reveal the association between Defendant National Recall & Data Services Inc., and Defendant Charles Holley, moreover a cursory review of Defendant Naviss and National Affiliates' website would reveal its direct marketing business, and provide "red flags" requiring additional review prior to the purchase of the data.

106. Defendant National Recall & Data Services Inc., and Defendant Charles Holley, had an ongoing business relationship with Defendant Naviss and National Affiliates through

which Defendant National Recall & Data Services Inc., and Defendant Charles Holley, knew, or should have known, that Defendant Naviss and National Affiliates were Direct Marketer Providers. Defendant Naviss and National Affiliates was required to contractually agree with Defendant National Recall & Data Services Inc., and Defendant Charles Holley, that it would only use information for purposes permitted by the DPPA. Hence, at a minimum, Defendant Naviss and National Affiliates' disclosures to Defendant National Recall & Data Services Inc., and Defendant Charles Holley, were not permitted by the DPPA permitted uses, and totally incompatible with the purpose for which the information was collected.

107. Defendant National Recall & Data Services Inc., and Defendant Charles Holley, was legally obligated to maintain documents for five (5) years of any and all individuals and entities that obtained the motor vehicle records. Discovery shall be required to produce such documents.

108. Defendant Naviss and National Affiliates were legally obligated to certify its intended DPPA uses, and obligate them to maintain documents for five (5) years of any and all individuals and entities that obtained the motor vehicle records. Discovery shall be required to produce such documents.

109. Defendant National Recall & Data Services Inc., and Defendant Charles Holley, failed to verify the accuracy of underlying facts, purported business objectives and affiliations of Defendant Naviss and National Affiliates declining to confirm inferences of risk that existed that Defendant National Affiliates did not possess permissible DPPA purposes, actions best construed as deliberate ignorance, or in the alternative, negligent.

110. Defendant National Recall & Data Services Inc., and Defendant Charles Holley, became

the custodian of the motor vehicle records with a duty to exercise reasonable care when re-disclosing or reselling motor vehicle records. Third parties benefitted from Defendant National Recall & Data Services Inc., and Defendant Charles Holley, as the custodian.  On information and belief, Third Parties that did not have a contract with State Motor Vehicle Departments because they knew State Motor Vehicle Departments would not authorize them to obtain MVRs since they were in the Direct Marketing Industry knew it had no authority to obtain the state motor vehicle records directly. While the contract with the State Motor Vehicle Departments was with Defendant National Recall & Data Services Inc., and Defendant Charles Holley, for all extent and purposes, Third Parties became the primary recipient of the motor vehicle records transferred from the State Motor Vehicle Departments. Defendant National Recall & Data Services Inc., and Defendant Charles Holley, failed in their duty as gatekeeper, failing to exercise reasonable care by allowing third parties access to the motor vehicle records in such manner. Defendant National Recall & Data Services Inc., and Defendant Charles Holley, failed intentionally, or in the alternative, negligently.

111. Defendant National Recall & Data Services Inc., and Defendant Charles Holley, as custodian of the motor vehicle records, was obligated to investigate and determine whether Defendant National Affiliates had a DPPA permissible use for the motor vehicle records it sought from Defendant National Recall & Data Services Inc., and Defendant Charles Holley; however Defendant National Recall & Data Services Inc. , and Defendant Charles Holley, knowingly, with willful and wanton disregard, or in the alternative, negligently, failed to provide a reasonable investigation of Defendant National Affiliates prior to reselling the motor vehicle records. A minimal review by

Defendant National Recall & Data Services Inc., and Defendant Charles Holley, of

Defendant National Affiliates' business practices would have revealed "red flags", as to

its claimed DPPA permissible uses since it was a direct marketing entity.

112.  Their obligation exists to conduct investigative duties on resellers, using minimal

safeguards in a reseller's request process. Such additional burdens in doing so impose

the benefit of preventing stalking, harassment, identity theft, and other criminal acts

this would be well worth the time and expense of such a burden. Defendant National

Recall & Data Services Inc., and Defendant Charles Holley, knowingly, or in the

alternative carelessly, failed to take reasonable basic steps to confirm the truthfulness

of the stated purposes of the claimed DPPA uses by Defendant National Affiliates. Their

willful or negligent blindness is not a defense to liability.

### VI.
### DEFENDANT'S HARMFUL BUSINESS PRACTICES

113. Defendants' activities occurred throughout the United States, obtaining the motor

vehicle records of Plaintiffs and the Class Members for purposes not permitted - a

course of action, and a body of information, that is protected from access and

disclosure by federal law.

114. Without remedy, Plaintiff's and Class Members' privacy will continue to be violated

by Defendants and a multitude of companies affiliated with Defendants — companies

they've never heard of, companies they have no relationship with, and companies

they would never choose to trust with their motor vehicle records.

115. The collection, use, and disclosure of Plaintiff's and Class Members' motor vehicle

records by Defendants implicates Plaintiff's and Class Members' privacy and physical

safety. Such information is afforded special attention due to the consequences for both privacy and physical safety that may flow from its disclosure. The heightened privacy and physical safety concerns generated by obtaining, using, and disclosing such information, without authorization, is apparent in U.S. law, creating restrictive consent standards for its obtainment, use, and disclosure.

116. Defendants obtained Class Members' motor vehicle records for the purpose of committing a tortious and/or criminal act, and violated the rights of Plaintiffs and Class Members.

117. Defendants have, either directly, or by aiding, abetting, and/or conspiring to do so, willfully, knowingly, negligently, or recklessly, disclosed, exploited, misappropriated and/or engaged in widespread commercial usage of Plaintiff's and the Class Members' motor vehicle records, obtaining personal information for Defendants' own benefit, without legal authorization, and without Plaintiff's and Class Members' knowledge, authorization, or consent. Such conduct constitutes a highly offensive and dangerous invasion of Plaintiff's and the Class Members' privacy and safety.

118. Defendants knowingly obtained, disclosed, and/or re-sold Plaintiffs and Class Members personal information, data derived from motor vehicle records in whole or part, for uses not permitted legally, a violation of a federal law which afforded statutory protections.

119. At all times material, Defendants, and agents of the Defendants, knew, or reasonably should have known, that their actions violated clearly established statutory rights of the Plaintiffs and the Class members.

120. The individual Defendants knowingly authorized, directed, ratified, approved,

acquiesced in, committed or participated in disclosing Plaintiff's and the Class members' highly restricted personal information.

121. The individual Defendants were aware, or should have been aware, that such a disclosure of Plaintiff's and the Class members' highly restricted personal information, without the express consent of the person to whom the information pertained was an invasion of privacy in violation of the DPPA.

122. Plaintiffs and Class Members were harmed when Defendants intentionally, or in the alternative, negligently, obtained, processed, disseminated, stored, and used motor vehicle records to market and solicit Plaintiff's and Class Members', obtained without authorization, and invading their right of privacy.

123. Defendants' conduct caused harm to Plaintiff's and Class Members' privacy and safety expectations.

124. Defendants were not authorized to have free access to Plaintiff's and Class Members' motor vehicle records for purposes unrelated to Defendants' claimed DPPA purpose when initially obtaining the motor vehicle records from the state.

125. Defendants failed to acquire, independently, and in concert, the express consent, of Plaintiffs and Class Members before obtaining, collecting, generating, deriving, disseminating, storing, or causing to be stored, re-disclosing or purchasing the MVR data of Plaintiffs and Class Members.

126. The Defendant provided the Plaintiff's and Class Members' MVR data to third parties in the form in which it is acquired or Defendants changed the form or content of the MVR data in order to avoid detection.

127. Third parties associated with Defendants that accessed Plaintiff's and Class

Members' motor vehicle records failed to provide notice of any and all of its activities, any and all uses of the motor vehicle records, present location of all motor vehicle records, and the identity of parties that accessed such motor vehicle records.

128. The Defendants accessed MVR data which included information about children that qualify to obtain a driver's license and/or register a motor vehicle, failing to distinguish personal data about children ages 18 and under from personal data about adults.

129. The Defendants failed to provide adequate policies, practices, and procedures relating to the re-disclosure and resale to third parties obtaining the Plaintiff's and Class Members' motor vehicle records.

130. The Defendants failed to monitor compliance regarding the conditions of use between third parties involved in the re-disclosure, resale of Plaintiff's and Class Members' motor vehicle records, failing to enumerate prohibitions and restrictions on access to the motor vehicle records.

131. Defendants used, or permitted to be used, false and misleading advertisements, derived from the data within Plaintiff's and Class Members' motor vehicle records, in a marketing and solicitation exploit, sending a deceptive mailer which included false statements advising Plaintiffs and Class Members that their auto warranties had expired, or were about to expire, creating a sense of urgency by claiming the offering period was limited, mailing such in an envelope which appeared to be state official business.

132. Defendants' activities alleged herein in parts constituted a knowing and intentional scheme to defraud Plaintiffs and the Class Members, and to wrongfully access and retain Plaintiff's and Class Members' motor vehicle records.

133. In the course of committing the acts described above, Defendants intentionally accessed, on a repetitive basis, and without authorization, documents, derived in whole or part, from government facilities, in order to obtain Plaintiff's and Class Members' motor vehicle records, intentionally exceeding access authorization, obtaining, and using Plaintiff's and Class Members' motor vehicle records for impermissible purposes.

134. Harms and damages to Plaintiffs and the Class Members occurred during the class period set forth in the factual allegations herein and continue to the present, as a consequence of Defendants' conduct in harvesting Plaintiff's and Class Members' motor vehicle records.

135. Further, through its practices, Defendants have been able to raise its profile as possessing motor vehicle records with many companies, enabling Defendants to attract business, increase its prospective revenue, secure investment funding, and thereby profit from its conduct described herein.

136.  As with any form of property, Plaintiffs, as the owners, should be compensated for the use and exploitation thereof, and if they are not, they suffer concrete, measurable damage and injury, the exact amount of which shall be provided by Plaintiffs through expert opinion.

137. The Defendants acquired Plaintiff's and Class Members' motor vehicle records that were unnecessary to motor vehicle records stated functions, but were useful to the Defendants in their commercial compilation, and use of the data derived from the motor vehicle records. With the motor vehicle records acquired, the Defendants used the information to compile—in addition to the types of information—personal and private

information that included consumers' personal characteristics.

138. During the Class Period, each Plaintiffs named herein had personal motor vehicle records obtained, used, re-disclosed, stored, resold, and purchased for purposes that included marketing and solicitation, without their express consent. Such data was identifiable as to each of the Plaintiffs and Class Members and were transmitted to third parties for purposes wholly unrelated to its use and functionality when Plaintiffs and Class Members produced such to the state. Based upon information and belief, the motor vehicle records continue to be sold to a multitude of entities.

**VII.**
**CLASS ALLEGATIONS**

140. Plaintiffs bring their action on behalf of themselves and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. Plaintiffs seek certification of the following classes (collectively, the "Classes"):

**NATIONWIDE CLASS**: All persons in the United States who, on or after, four (4) years prior to the date of their filed complaint, through the final disposition of this or any related actions (the "Class Period"), had Defendant National Recall & Data Services, Inc., and Defendant Charles Holley, obtain their motor vehicle records from their State Department of Motor Vehicles, to re-disclose, and/or resell, for direct marketing purposes, without their express consent, in violation of the Driver's Privacy Protection Act, 18 U.S.C. §2721 et seq.

**NAVISS SUBCLASS:** All persons in the United States who, on or after, four (4) years prior to the date of their filed complaint, through the final disposition of this or any related actions (the "Class Period"), had Defendant NAVISS, obtain directly or indirectly, their motor vehicle records from Defendant National Recall & Data Services, Inc., and Defendant Charles Holley, to re-disclose, and/or resell, for direct marketing purposes, without their express consent, in violation of the Driver's Privacy Protection Act, 18 U.S.C. §2721 et seq.

141. Excluded from the class are the Defendants, its employees, officers, directors, agent, legal representatives, heirs, assigns, successors, individual or corporate entities acting

within a partnership, joint venture, trust, association, union, subsidiaries, whether

wholly or partially owned, divisions, whether incorporated or not, affiliates, branches,

joint ventures, franchises, operations under assumed names, websites, and entities

over which Defendants' exercises supervision or control, or group of individuals

associated in fact, although not a legal entity, or other legal entity, in addition to

Plaintiff's legal counsel, employees, and their immediate family, the judicial officers and

their immediate family, and associated court staff assigned to their case, and all

persons within the third degree of consanguinity, to any such persons.

142. Plaintiffs reserve the right to revise these definitions of the classes based on facts they

learn as litigation progresses.

143. The Class consists of millions, if not tens of millions, of individuals and other entities,

making joinder impractical.

144. The members of the Class are identifiable from the information and records in the

custody of the Defendants identified in the Class definition, and the State Motor

Vehicle Department which provided motor vehicle records to National Recall & Data

Services Inc..

145. Defendants' conduct, as complained of herein, is generally applicable to the Class,

thereby making appropriate final injunctive relief or corresponding declaratory relief

with respect to the Class as a whole.

146. The claims of Plaintiffs are typical of the claims of all other Class Members.

147. Plaintiffs will fairly and adequately represent and protect the interests of the Class.

Plaintiffs have suffered damages in their own capacity from the practices complained

of, in that their personal information or highly restricted personal information has been

unlawfully obtained, disclosed, and sold for a profit, and is ready, willing, and able, to serve as Class representatives.

148. Plaintiffs and their counsel are committed to vigorously prosecuting their action on behalf of the Class Members, and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interest that might cause them not to vigorously pursue their action. Plaintiffs have retained counsel with substantial experience in prosecuting complex litigation and class actions involving unlawful commercial practices, including, but not limited to, the following Federal Privacy Class Actions:

Lane v. Facebook, Inc., 696 F.3d 811, 821 (9thCir. 2012) cert. denied,13-136, 2013 WL 5878083(U.S. Nov. 4, 2013), a Federal Class Action, decided by the United States Supreme Court, involving similar underlying facts as the present action, about 30 companies, violations of the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710, et seq.;

Cross v. Blank, Adv. No.: 9:15ap00926FMD, (M.D. Fla. 2015), a Federal Class Action involving similar underlying facts as the present action, violations of the Driver's Privacy Protection Act ("DPPA"),18 U.S.C. § 2721, et seq.;

Cook v. ACS State & Local Solutions, Inc. 663 F.3d 989 (10th Cir. 2011), a Federal Class Action involving similar underlying facts as the present actions violations of the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. § 2721, et seq.;

Doe et. al. v. Compact Information Systems Inc. et al., 3:13cv05013MBH, (N.D. Tex. 2013), a Federal Class Action involving similar underlying facts as the present action, violations of the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. § 2721, et seq.;

Haney v. Recall Center, No. 10-cv-04003 (W.D. Ark. May 9, 2012) a Federal Class Action, (certified class action), involving similar underlying facts as the present action, violations of the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. § 2721, et seq.;

Richard Fresco v. R.L. Polk., No. 09-13344 (11th Cir. 2010), (Fresco II"-Intervention), a Federal Class Action involving similar underlying facts as the present action, violations of the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. § 2721, et seq.;

Sharon Taylor et. al. v. Acxiom Corporation et al., 2:0-cv-0001, (E.D. Tex. 2007), a Federal Class Action involving similar underlying facts as the present action, about 50 companies, violations of the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. § 2721, et seq.;

Sharon Taylor et. al. v. ACS State & Local Solutions, Inc. et. al., 2:07-cv-0013, (E.D. Tex. 2007), a Federal Class Action involving similar underlying facts as the present action, about 50 companies, violations of the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. § 2721, et seq.;

Sharon Taylor et. al. v. Texas Farm Bureau Mutual Insurance Company et.al., 2:07-cv-0014, (E.D. Tex. 2007), a Federal Class Action involving similar underlying facts as the present action, about 50 companies, violations of the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. § 2721, et seq;

Sharon Taylor et. al. v. Safeway Inc. et. al., 2:07-cv-0017, (E.D. Tex. 2007), a Federal Class Action involving similar underlying facts as the present action, about 50 companies, violations of the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. § 2721, et seq.;

Sharon Taylor et. al. v. Biometric Access Company et. al., 2:07-cv-0018, (E.D. Tex. 2007), a Federal Class Action involving similar underlying facts as the present action, about 50 companies, violations of the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. § 2721, et seq.;

Sharon Taylor et. al. v. Freeman Publishers Inc., 2:07-cv-0410,, (E.D. Tex. 2007), a Federal Class Action involving similar underlying facts as the present action, about 50 companies, violations of the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. § 2721, et seq..

149. A class action will cause an orderly and expeditious administration of Class Members' claims and economies of time, effort, and expense will be fostered, and uniformity of decisions will be ensured. Individual Class Members are unlikely to be aware of their rights and are not likely to be in a position (either through experience or financially) to commence individual litigation against Defendants.

150. Absent a class action, most Class Members would find the cost of litigating their claims to be prohibitive and will have no effective remedy. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

151. The Defendants have acted and failed to act on grounds generally applicable to Plaintiffs and all of the other Class Members, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members.

152. The factual and legal basis of Defendants' liability to Plaintiffs, and to the other Class Members are the same, resulted in injury to Plaintiffs and all of the other Class Members. Plaintiffs and the other Class Members have all suffered harm and damages as a result of Defendants' wrongful conduct.

153. Certification of a class under Fed. R. Civ. P. 23 is appropriate because Plaintiffs and the putative Class Members have questions of law and fact that are common to the Class that predominate over any questions affecting only individual members of the Class, and a class action is superior to all other available methods for fair and efficient adjudication of their controversy in fact, the wrongs suffered and remedies sought by Plaintiffs and the other members of the Class are premised upon an unlawful scheme participated in by Defendants.

154. There are many questions of law and fact common to Plaintiffs and the Class Members, and those questions predominate over any questions that may affect individual Class Members. Common questions for the Class include, but are not limited to the following:

1. whether Defendant National Recall & Data Services Inc. and Defendant Charles Holley obtained, re-disclosed, and/or resold Plaintiffs and Class Member's personal information contained within motor vehicle records maintained by the State motor vehicle departments;

2. whether Defendant Naviss obtained, re-disclosed, and/or resold Plaintiffs and Class Member's personal information contained within motor vehicle records maintained by the State motor vehicle departments;

3. whether Defendant National Recall & Data Services Inc. and Defendant Charles Holley had a DPPA permissible use to obtain, re-disclose, and/or resell Plaintiffs and Class Member's personal information contained within motor vehicle records maintained by the State motor vehicle departments;

4. whether Defendant Naviss had a DPPA permissible use to obtain, re-disclose, and/or resell Plaintiffs and Class Member's personal information contained within motor vehicle records maintained by the State motor vehicle departments;

5. whether Defendant National Recall & Data Services Inc. and Defendant Charles Holley obtained the written express consent of Plaintiffs and Class Members to obtain, re-disclose, and/or resell Plaintiffs and Class Member's personal information contained within motor vehicle records maintained by the State motor vehicle departments;

6. whether Defendant Naviss obtained the written express consent of Plaintiffs and Class Members to obtain, re-disclose, and/or resell Plaintiffs and Class Member's personal information contained within motor vehicle records maintained by the State motor vehicle departments;

7. whether Defendant National Recall & Data Services Inc. and Defendant Charles Holley acted knowingly when it obtained, re-disclosed, and/or resold Plaintiffs and Class Member's personal information contained within motor vehicle records maintained by the State motor vehicle departments;

8. whether Defendant Naviss acted knowingly when it obtained, re-disclosed, and/or resold Plaintiffs and Class Member's personal information contained within motor vehicle records maintained by the State motor vehicle departments;

9. whether Defendant National Recall & Data Services Inc. and Defendant Charles Holley's conduct described herein violates the Driver's Privacy Protection Act, 18 U.S.C. §2721;

10. whether Defendant Naviss' conduct described herein violates the Driver's Privacy Protection Act, 18 U.S.C. §2721;

11. whether Defendant National Recall & Data Services Inc. and Defendant Charles Holley as custodians of the Plaintiff's and Class Members' motor vehicle records, possessed a duty to use reasonable care to investigate and determine the validity of the claimed DPPA permissible uses by Defendant Naviss, prior to, during, and after, re-disclosing, and/or re-selling Plaintiff's and Class Members' motor vehicle records to such entities by permitting procurement, re-disclosure, and re-sale of the Plaintiff's and Class Members' motor vehicle records by such entities, and if so, whether Defendant National Recall & Data Services Inc. and Defendant Charles Holley intentionally, or in the alternative, negligently failed in their obligation;

12. whether Defendant Naviss, as recipients of the Plaintiff's and Class Members' motor vehicle records from Defendant National Recall & Data Services Inc. and Defendant Charles Holley had a duty to use reasonable care to investigate and determine the validity of the claimed DPPA permissible uses by Defendant National Recall & Data Services Inc. and Defendant Charles Holley used to obtain the motor vehicle records from the State Department of Motor Vehicles, prior to, during, and after, obtaining Plaintiff's and Class Members' motor vehicle records, and if so, whether Defendant Naviss  intentionally, or in the alternative, negligently failed in their obligation;

13. whether Defendant National Recall & Data Services Inc. and Defendant Charles Holley complied with 18 U.S.C.  §2721 (c), the obligation to maintain a record of any person and/or company that Defendant National Recall & Data Services Inc. and Defendant Charles Holley re-disclosed, and /or resold Plaintiffs and Class Member's personal information contained within motor vehicle records maintained by the State motor vehicle departments for a period of five (5) years; and if so, whether  Defendant National Recall & Data Services Inc. and Defendant Charles Holley intentionally, or in the alternative, negligently failed in their obligation;

14. whether Defendant Naviss complied with 18 U.S.C.  §2721 (c), the obligation to maintain a record of any person and/or company that Defendant Naviss re-disclosed, and /or resold Plaintiffs and Class Member's personal information contained within motor vehicle records maintained by the State motor vehicle departments for a period of five (5) years; and if so, whether Defendant Naviss intentionally, or in the alternative, negligently failed in their obligation;

15. the nature, and extent of Plaintiff's and Class Members' damages;

16. the nature, and extent of all statutory penalties, including liquidated damages of $2500.00, and/ or damages for which Defendant National Recall & Data Services Inc. and Defendant Charles Holley are liable for, and legally obligated to, Plaintiffs and Class Members;

17. the nature, and extent of all statutory penalties, including liquidated damages of $2500.00, and/ or damages for which Defendant Naviss is liable for, and legally obligated to, Plaintiffs and Class Members;

18. whether Plaintiffs and Class Members are entitled to appropriate injunctive relief against Defendant National Recall & Data Services Inc.  and Defendant Charles Holley;

19. whether Plaintiffs and Class Members are entitled to appropriate injunctive relief against Defendant Naviss, and

20. whether punitive damages are appropriate.

155. The questions of law and fact common to Class Members predominate over any questions affecting only individual members; and a class action is superior to all other available methods for the fair and efficient adjudication of their controversy.

**COUNT I**
**Violations of the Driver's Privacy Protection Act, § 18 U.S.C. § 2721 et seq.:**
**On Behalf of All Classes, and against All Defendants**

156. Plaintiffs incorporate by reference and re-allege all paragraphs previously alleged herein.

157. As set forth herein, Defendants violated the Driver's Privacy Protection Act, 18 U.S.C. § 2721, by engaging in the acts alleged in their complaint.

158. The Driver's Privacy Protection Act, 18 U.S.C. §2721 (a) et seq., regulates obtaining and disclosing personal information gathered by State Departments of Motor Vehicles, making it unlawful for a person or organization from knowingly obtaining or disclosing personal information, or highly restricted personal information contained in motor vehicle records for any purpose not specifically enumerated under §2721(b).

159. Accordingly, Defendants violated 18 U.S.C. §2721 et seq. by intentionally obtaining,

re-disclosing, and/or re-selling Plaintiff's and Class Members' motor vehicle records

without knowledge, consent, or authorization, for purposes not specifically

enumerated with the act.

160. Plaintiffs and Class Members are "person[s] referencing" "an individual, organization,

or entity, but does not include a State or agency thereof", within the meaning of 18

U.S.C. §2725(2).

161. 18 U.S.C. § 2724(a) prohibits the release and disclosure of personal information, as

defined in 18 U.S.C. § 2725(3) about an individual obtained by the State Motor Vehicle

Department except as provided in subsection (b), permissible uses, regulates the

prohibition on release and use of certain personal information from State motor

vehicle records.

162. 18 U.S.C. §2725(3) "personal information" means information that identifies an

individual, including an individual's photograph, social security number, driver

identification number, name, address (but not the five (5) digit zip code), telephone

number, and medical or disability information; but does not include information on

vehicular accidents, driving violations, and driver's status.

163. The contents of the records obtained by Defendants pertaining to the Plaintiffs and

Class Members constitute a "motor vehicle record", referencing "any record that

pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle

registration, or identification card issued by a department of motor vehicles", within

the meaning of 18 U.S.C. §2725(1).

164. 18 U.S.C. § 2722(b), prohibits any organization or entity from making any false

representation to obtain any personal information or highly restricted personal

information from an individual's motor vehicle record.

165. Defendants violated 18 U.S.C. §2721 (b), individually, and in concert, by making false representations to knowingly obtain the Plaintiff's and Class Members' motor vehicle records, directly or indirectly, for Direct Marketing purposes, knowingly, or in the alternative, providing for use in marketing and solicitation Plaintiffs and Class Members, without their express consent.

166. 18 U.S.C. §2725(5) "express consent" means consent in writing, including consent conveyed electronically that bears an electronic signature as defined in section 106(5) of Public Law 106-229.

167. 18 U.S.C. § 2721(c), permits an "Authorized Recipient" of personal information (except for some exceptions) to re-disclose and/or re-sell the information, but only for a claimed use permitted under 18 U.S.C. § 2721(b). Defendant National Recall & Data Services Inc., Defendant Charles Holley and Defendant NAVISS were not Authorized Recipients, thereby violating 18 U.S.C. § 2721(c).

168. Defendant National Recall & Data Services Inc. and Defendant Charles Holley violated 18 U.S.C. § 2721(c) by re-disclosing and/or re-selling Plaintiff's and Class Members' information to Defendant Naviss and National Affiliates, non-Authorized Recipients.

169. Defendant National Recall & Data Services Inc. and Defendant Charles Holley are liable directly and/or vicariously for re-disclosure and resale to Defendant Naviss and National Affiliates, failing to use reasonable care to investigate Defendant Naviss and National Recall Affiliate's claimed DPPA permissible uses when re-disclosing and/or re-selling Plaintiff's and Class Members' motor vehicle records to such entities.

170.  18 U.S.C. § 2722(b)(12), prohibits the use of motor vehicle records for bulk

distribution for surveys, marketing or solicitations unless the State has obtained the express consent of the person to whom such personal information pertains. Defendant NAVISS violated 18 U.S.C. § 2722(b)(12) by obtaining, re-disclosing, and/or re-selling the motor vehicle records for purposes that include direct marketing, without the express consent of Plaintiffs and Class Members.

171. Defendant NAVISS and National Affiliates, violated 18 U.S.C. § 2721(c) as recipients of the Plaintiff's and Class Members' motor vehicle records from Defendant National Recall & Data Services Inc. and Defendant Charles Holley failing to use reasonable care to investigate and determine the validity of the claimed DPPA permissible uses by Defendant National Recall & Data Services Inc. and Defendant Charles Holley used to obtain the motor vehicle records from the State Department of Motor Vehicles, prior to, during, and after, obtaining Plaintiff's and Class Members' motor vehicle records.

172. Plaintiffs and the Class have suffered damages, as alleged herein, and pursuant to 18 U.S.C. § 2724(b)(1), are entitled to actual damages, but not less than liquidated damages in the amount of $2,500 each.

173. Plaintiffs and the Class, pursuant to 18 U.S.C. § 2724(b)(1), are entitled to preliminary, equitable, and declaratory relief, in addition to statutory damages of the greater of money, actual and punitive damages, reasonable attorneys' fees, and Defendants' profits obtained from the above-described violations. Unless restrained and enjoined, Defendants will continue to commit such acts. Plaintiffs remedy at law is not adequate to compensate him for these inflicted and threatened injuries, entitling Plaintiffs to remedies including injunctive relief as provided by 18 U.S.C. § 2724(b)(1).

174. As a direct and proximate result of the aforesaid acts and activities of Defendants,

Plaintiffs, and each of them, have been caused to sustain harm.

175. All of the acts and activities of Defendants, as heretofore set out, were performed intentionally, fraudulently, maliciously, knowingly, conspiratorially, and on occasion, negligently.  Plaintiffs and Class Members were damaged thereby, and seek redress thereof.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs, individually, and on behalf of all others similarly situated, respectfully prays for judgment against Defendants as follows:

a) For an order certifying that their action may be maintained as a class action under Fed. R. Civ. P. 23(a) and (b)(1)(a), (b)(2), and (b)(3);

b) For an order designating Plaintiffs and their counsel as representatives of the Class;

c) For a declaration that Defendants' actions violated the Federal Driver's Privacy Protection Act, 18 U.S.C. §2721, and for all actual damages, statutory damages, penalties, and remedies available as a result of Defendants' violations of the DPPA, but not less than liquidated damages in the amount of $2,500 for each Plaintiffs and each member of the Class;

d) As applicable to the Class mutatis mutandis, awarding injunctive and equitable relief including, inter alia: (i) prohibiting Defendants from engaging in the acts alleged above; (ii) requiring Defendants to disgorge all of its ill-gotten gains to Plaintiffs and the other Class Members motor vehicle records, or to whomever the Court deems appropriate; (iii) requiring Defendants to delete all motor vehicle records collected through the acts alleged above; (iv) awarding Plaintiffs and Class Members full restitution of all benefits wrongfully acquired by Defendants by means of the wrongful conduct alleged herein; and (v) ordering an accounting and constructive trust imposed on the data, funds, or other assets obtained by unlawful means as alleged above, to avoid dissipation, fraudulent transfers, and/or concealment of such assets by Defendants;

e) For a preliminary and permanent injunction restraining Defendants, its officers, agents, servants, employees, and attorneys, and those in active concert or participation with any of them from:

   1. Obtaining, directly or indirectly, Plaintiff's and Class Members' Motor Vehicle Records, without express consent, from the State Motor Vehicle Department, for purposes that violate the Driver's Privacy Protection Act;

2.  Re-disclosing Plaintiff's and Class Members' motor vehicle records for purposes that violate the DPPA;

3.  Reselling Plaintiff's and Class Members' motor vehicle records for purposes that violate DPPA;

4.  A permanent injunction enjoining and restraining Defendants, and all persons or entities acting in concert with them during the pendency of their action and thereafter perpetually, from obtaining, directly or indirectly, re-disclosing, and/or re-selling Plaintiff's and Class Members' Motor Vehicle Records, derived in whole or part, from data maintained by their State Motor Vehicle Department, for purposes that violate the Driver's Privacy Protection Act;

f)  For an award to Plaintiffs and the Class of their costs and expenses of their litigation;

g)  For an award to Plaintiffs and the Class for their reasonable attorneys' fees;

h)  An award to Class Members of damages, including but not limited to: compensatory, statutory, exemplary, aggravated, and punitive damages, as permitted by law and in such amounts to be proven at trial;

i)  For pre-and post-judgment interest as allowed by law; and

j)  For such other relief as the Court may deem just and proper.

Dated: August 13, 2016                          Respectfully submitted,
                                                LAW OFFICES OF JOSEPH H. MALLEY P.C.

                                                By: /s/ Joseph H. Malley
                                                Law Office of Joseph H. Malley P.C.
                                                1045 North Zang Blvd
                                                Dallas, TX 75208
                                                Telephone: 214.943.6100
                                                Facsimile: 214. 943.6170
                                                malleylaw@gmail.com

                                                Attorney for Plaintiffs Mark Laning, and
                                                Arthur Lopez, individually, and on behalf of
                                                a class of similarly situated individuals